UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRATERNAL ORDER OF POLICE,
METROPOLITAN POLICE DEPARTMENT
LABOR COMMITTEE, D.C. POLICE
UNION,

       1524 Pennsylvania Avenue, S.E.
       Washington, DC  20003,

              Plaintiff,

v.

THE DISTRICT OF COLUMBIA,

       John Wilson Building
       1350 Pennsylvania Avenue, N.W.
       Washington, DC  20004,

       <u>Serve</u>:
       Mayor Muriel Bowser
       1350 Pennsylvania Avenue, N.W.
       Washington, DC 20004,

       and

       Karl A. Racine
       Attorney General
       for the District of Columbia
       441 4th Street, N.W.
       Washington, DC  20001,

MURIEL BOWSER, in her official capacity as
Mayor of the District of Columbia,

       <u>Serve</u>:
       Mayor Muriel Bowser
       1350 Pennsylvania Avenue, N.W.
       Washington, DC 20004,

       and

Civil Action No. _____

Karl A. Racine
Attorney General
for the District of Columbia
441 4th Street, N.W.
Washington, DC 20001,

Defendants.

## COMPLAINT

The plaintiff, Fraternal Order of Police, Metropolitan Police Department Labor Committee, D.C. Police Union ("D.C. Police Union"), by its attorneys, hereby brings this lawsuit against the defendants, The District of Columbia ("District") and Mayor Muriel Bowser ("Mayor Bowser") (collectively, the "Defendants") seeking, among other things, relief arising out of Defendants' violations of the Equal Protection requirements of the Fifth Amendment and Fourteenth Amendments to the United States Constitution, the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 9, Clause 3 of the United States Constitution prohibiting bills of attainder, the Contracts Clause contained in Article I, Section 10, Clause 1 of the United States Constitution, 42 U.S.C. § 1983, and the District of Columbia Home Rule Act. In support of this Complaint, the D.C. Police Union states the following:

## I.
### Parties

1.      The D.C. Police Union is a labor union with its principal place of business located at 1524 Pennsylvania Ave., S.E., Washington, DC 20003. The D.C. Police Union is the exclusive representative of all police officers, sergeants, investigators, detectives, and detective sergeants of the D.C. Metropolitan Police Department and is comprised of approximately 3,600 members. The D.C. Police Union sues on behalf of its members as well as on its own behalf.

2.      The District is the government for the District of Columbia.   The District is responsible for all of the official acts of the Council and the Mayor of the District of Columbia.

3.      Muriel Bowser is the Mayor of the District of Columbia.   The Mayor is "responsible for the proper execution of all laws relating to the District."  D.C. Code § 1-204.22. Additionally, the Mayor is charged with official approval of the Acts of the Council of the District of Columbia, which become law upon the Mayor's approval.   *See* D.C. Code § 1-204.04(e).

## II.
## Jurisdiction and Venue

4.      This action arises under 42 U.S.C. § 1983, which imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

5.      Because this case arises under 42 U.S.C. § 1983, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

6.      Venue is proper in this court under 28 U.S.C. § 1391(b), which states: "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."   In this matter, the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020 was passed by the Council of the District of Columbia within the District of Columbia, and the provisions of the Act will be enforced by the Mayor within the District of Columbia.

### III.
### Factual Background

7.      On July 7, 2020, the Council of the District of Columbia unanimously approved and signed the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020 (the "Act"). The Chair of the Council of the District of Columbia, Phil Mendelson, transmitted the Act to Mayor Bowser on July 9, 2020. On July 22, 2020, Mayor Bowser signed the Act.

8.      The purpose of the Act, as set forth therein, is "[t]o provide, on an emergency basis, for comprehensive policing and justice reform for District residents and visitors, and for other purposes." *See* Act at 1. The Act further states, "On May 25, 2020, Minneapolis Police Department officer Derek Chauvin murdered George Floyd by applying a neck restraint to Floyd with his knee for 8 minutes and 46 seconds. Hundreds of thousands, if not millions, of people in cities and states across the world, including in the District, have taken to the streets to peacefully protest injustice, racism, and police brutality against Black people and other people of color." *Id.* at 3.

9.      Section 116 of the Act amends Section 1708 of the District of Columbia Government Comprehensive Merit Personnel Act, codified at D.C. Code § 1-617.08, by adding a new subsection (c), which states as follows:

> (c)(1) All matters pertaining to the discipline of sworn law enforcement personnel shall be retained by management and not be negotiable.

> (2) This subsection shall apply to any collective bargaining agreements entered into with the Fraternal Order of Police/Metropolitan Police Department Labor Committee after September 30, 2020.

10.     Section 116 of the Act singles out the D.C. Police Union as the only labor union in the District of Columbia to be stripped of the right to negotiate with management regarding

4

the discipline of its members.  Significantly, there are approximately forty-four (44) other labor unions that represent employees of the District of Columbia government.  Each of these labor unions retained the right to negotiate with management concerning the discipline of its members and were excluded from this impact of the Act.

11.     Prior to the enactment of the Act, the D.C. Police Union and every other labor union in the District of Columbia had enjoyed the right to bargain with management concerning the discipline of members.  This right was conferred upon District of Columbia government employees through the Comprehensive Merit Personnel Act ("CMPA").  The CMPA was enacted in 1979 with the purpose to, among other things, to "[c]reate uniform systems for personnel administration among the executive departments and agencies reporting directly to the Mayor of the District of Columbia and among the Council, independent agencies, boards, and commissions in the District of Columbia government;  . . . [e]stablish impartial and comprehensive administrative or negotiated procedures for resolving employee grievances;" and "[p]rovide for a positive policy of labor-management relations including collective bargaining between the District of Columbia government and its employees."  D.C. Code § 1-601.02.  The stated purpose of the CMPA emphasizes its intention that "[e]mployees are protected against coercion for partisan political purposes."  D.C. Code § 1-601.02(c).  With limited exceptions, the CMPA applies to all agencies and employees of the District of Columbia government.  *See* D.C. Code § 1-602.01.

12.     Concerning labor relations, the CMPA states: "The District of Columbia government finds and declares that an effective collective bargaining process is in the general public interest and will improve the morale of public employees and the quality of service to the public."  D.C. Code § 1-617.01(a).  As such, the CMPA guarantees that: "Each employee of the

District government has the right, freely and without fear of penalty or reprisal, [t]o form, join, and assist a labor organization or to refrain from this activity" and to "engage in collective bargaining concerning terms and conditions of employment, as may be appropriate under this law and rules and regulations, through a duly designated majority representative." D.C. Code § 1-617.01(b).

13.     D.C. Code § 1-617.08(b) states that "all matters shall be deemed negotiable except those that are proscribed by this subchapter." Section 1-617.08(a) states that management shall retain the sole right "[t]o hire, promote, transfer, assign, and retain employees in positions within the agency and to suspend, demote, discharge, or take other disciplinary action against employees for cause." Notably, while management retained the sole right to take disciplinary action against employees, the process by which this discipline was administered remained subject to negotiation between management and the labor unions. Accordingly, for the past forty-one (41) years since the passage of the CMPA, every labor union in the District, including the D.C. Police Union, has enjoyed the right to bargain with management concerning the disciplinary process employed by management.

14.     Since the passage of the CMPA, the D.C. Police Union and management of the Metropolitan Police Department have negotiated numerous collective bargaining agreements that cover the disciplinary procedures that apply to D.C. Police Union members.

15.     Article 12 of the current Collective Bargaining Agreement between the D.C. Police Union and the Metropolitan Police Department contains the terms governing the discipline of D.C. Police Union members. In addition to setting forth the terms governing discipline, Article 12, Section 1 states that the "parties have agreed to form a Joint Labor-Management Committee ("Committee"), with no more than five (5) members per side, to discuss

possible revisions to Article 12 (Discipline) of the parties' existing Collective Bargaining Agreement." Notably, Article 12, Section 2 of the Collective Bargaining Agreement states that "[t]he current Article 12, as set forth in the parties' existing Collective Bargaining Agreement, shall remain in full force and effect during the Committee's deliberations and shall be incorporated into any successor Collective Bargaining Agreement until such time as the Committee reaches agreement on any revisions to Article 12 or the process described herein is completed." To date, the Committee has not reached agreement on any revisions to Article 12. Therefore, the current Article 12 "shall be incorporated into any successor Collective Bargaining Agreement."

16.     Section 116 of the Act singles out the D.C. Police Union and deprives the D.C. Police Union and its members of the right to bargain with management over the discipline of its members. No other public employees of the District or labor unions representing those employees are restricted from bargaining with management concerning discipline. Instead, the CMPA right to bargain with management concerning employee discipline was retained by these other employees and labor unions to the sole exclusion of the D.C. Police Union and sworn law enforcement. In doing so, the District has separated sworn law enforcement personnel into a new, distinct class, distinguishing them from all other District employees and has discriminated against that class by stripping them of their right to bargain with management concerning discipline. The Defendants' motivation for the Act is not grounded in logic, data, sound policy or reason, but is instead a deliberate and reactionary concession to anti-police rhetoric and protests being carried out by a small number of citizens, many of whom are not even District residents.

**Count I**
**Violation of the Equal Protection Requirements of**
**the Fifth Amendment and the Fourteenth Amendment**
**to The Constitution of the United States, 42 U.S.C. § 1983,**
**and the District of Columbia Home Rule Act**
**Against All Defendants**

17.     Paragraphs 1-16 of this Complaint are restated and fully incorporated herein.

18.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that the government shall not "deny to any person within its jurisdiction the equal protection of the laws."

19.     The equal protection requirements of the Fourteenth Amendment have been incorporated into the Due Process Clause of the Fifth Amendment, and "the reach of the equal protection guarantee of the Fifth Amendment is coextensive with that of the Fourteenth." *United States v. Paradise*, 480 U.S. 149, 166 n.16 (1987) (plurality opinion of Brennan, J.).   The "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Weisenfeld*, 420 U.S. 636, 638 n.2 (1975); *see also Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.")

20.     Under the District of Columbia Home Rule Act, D.C. Code § 1-203.02 states that "the legislative power of the District shall extend to all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of this chapter subject to all the restrictions and limitation imposed upon the states by the 10th section of the 1st article of the Constitution of the United States."

21.     The Act eliminates the right of the D.C. Police Union and its members from bargaining with management on "all matters pertaining to the discipline of sworn law enforcement personnel."   The right to bargain with management concerning the discipline of

employees had been enjoyed by the D.C. Police Union and its members since the passage of the CMPA in 1979, and remains a right held by every other District of Columbia government employee and labor union.

22.    Through the Act, the District has distinguished and separated sworn law enforcement personnel into a new, distinct class, separating them from every other District government employee for the sole purpose of discriminating against a disfavored class and stripping them of their rights.    As such, the District has created a law that provides for the dissimilar treatment of District government employees who are similarly situated.

23.    The discriminatory distinction drawn in the Act between sworn police personnel and every other District employee and labor union lacks any rational connection to a legitimate government objective.    Instead, the Act only serves the illegitimate objective of punishing and discriminating against a class of people that are presently disfavored politically.

24.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the District of Columbia Home Rule Act prohibit legislation enacted for the illegitimate purpose of punishing and disadvantaging groups that are out of political favor.

WHEREFORE, the D.C. Police Union requests that the Court enter judgment in its favor against the Defendants:

1.  Declaring that Section 116 of the Act is invalid and unconstitutional because it violates the Equal Protection Requirements of the Fifth Amendment and the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the District of Columbia Home Rule Act;

9

2. Permanently enjoining the approval, enactment, and enforcement of Section 116 of the Act;

3. Awarding the D.C. Police Union attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

4. Granting such other and further relief as the Court may deem just and proper.

<u>**Count II**</u>
<u>**Violation of the Bill of Attainder Clause of**</u>
<u>**The Constitution of the United States, 42 U.S.C. § 1983,**</u>
<u>**and the District of Columbia Home Rule Act**</u>
<u>**Against All Defendants**</u>

25. Paragraphs 1-24 of this Complaint are restated and fully incorporated herein.

26. Article I, Section 9, Clause 3 of the United States Constitution states that "No bill of attainder or ex post facto Law shall be passed." Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Brown*, 318 U.S. 437, 449 (1965). "The deprivation of any rights, civil or political, previously enjoyed, may be punishment." *Id.* at 448.

27. The Act lacks a rational basis, but was instead offered as a punishment of sworn law enforcement officers in the District of Columbia to quell rising tensions and protests in the District coming as a result of the death of George Floyd in Minnesota. No studies or surveys were conducted, no research was performed or basis was proffered for the passage of the Act other than the protests arising out of an incident that occurred over one thousand miles from the District of Columbia, and that was unrelated to any District resident, agency, or officer.

28. The District of Columbia Home Rule Act, D.C. Code § 1-203.02 states that "the legislative power of the District shall extend to all rightful subjects of legislation within the

District consistent with the Constitution of the United States and the provisions of this chapter subject to all the restrictions and limitation imposed upon the states by the 10th section of the 1st article of the Constitution of the United States."

29.     The Act eliminates the right of the D.C. Police Union and its members from bargaining with management on "all matters pertaining to the discipline of sworn law enforcement personnel." The Act specifically singles out the D.C. Police Union and states that "[t]his subsection shall apply to any collective bargaining agreements entered into with the Fraternal Order of Police/Metropolitan Police Department Labor Committee after September 30, 2020." The right to bargain with management concerning the discipline of employees had been enjoyed by the D.C. Police Union and its members since the passage of the CMPA in 1979, and remains a right held by every other District of Columbia government employee and labor union.

30.     The Act further states that "[o]n May 25, 2020, Minneapolis Police Department officer Derek Chauvin murdered George Floyd," and then improperly imputes that conduct on sworn law enforcement in the District of Columbia to inflict punishment on sworn law enforcement and make sweeping changes to laws specifically targeting sworn law enforcement and the D.C. Police Union. For this and other reasons and motivations behind the passage of the Act, the Act is a prohibited bill of attainder.

WHEREFORE, the D.C. Police Union requests that the Court: enter judgment in its favor against the Defendants:

1.  Declaring that Section 116 of the Act is invalid and unconstitutional because it violates prohibition against bills of attainder contained in Article I, Section 9, Clause 3 of the United States Constitution, 42 U.S.C. § 1983, and the District of Columbia Home Rule Act;

11

2.   Permanently enjoining the approval, enactment, and enforcement of Section 116 of the
     Act;

3.   Awarding the D.C. Police Union attorneys' fees and costs, pursuant to 42 U.S.C. § 1988;
     and

4.   Granting such other and further relief as the Court may deem just and proper.

**Count III**
**Violation of the Contracts Clause of**
**The Constitution of the United States, 42 U.S.C. § 1983,**
**and the District of Columbia Home Rule Act**
**Against All Defendants**

31.   Paragraphs 1-30 of this Complaint are restated and fully incorporated herein.

32.   Article I, Section 10, Clause 1 of the United States Constitution states that "[n]o
state shall . . . pass any . . . Law impairing the Obligation of Contracts."

33.   The District is subject to the restrictions imposed under the Contracts Clause. *See*
*Washington Teachers' Union Local No. 6, Am. Fed. of Techers, AFL-CIO v. Bd. of Education of*
*the District of Columbia*, 109 F.3d 774, 778 (D.C. Cir. 1997).  The District of Columbia Home
Rule Act, D.C. Code § 1-203.02 states that "the legislative power of the District shall extend to
all rightful subjects of legislation within the District consistent with the Constitution of the
United States and the provisions of this chapter subject to all the restrictions and limitation
imposed upon the states by the 10th section of the 1st article of the Constitution of the United
States."

34.   A contractual relationship currently exists between the D.C. Police Union and the
Metropolitan Police Department through the parties' Collective Bargaining Agreement.

35.   Article 12, Section 1 of the current Collective Bargaining Agreement between the
D.C. Police Union and the Metropolitan Police Department states that the "parties have agreed to

12

form a Joint Labor-Management Committee ("Committee"), with no more than five (5) members per side, to discuss possible revisions to Article 12 (Discipline) of the parties' existing Collective Bargaining Agreement." Notably, Article 12, Section 2 of the Collective Bargaining Agreement states that "[t]he current Article 12, as set forth in the parties' existing Collective Bargaining Agreement, shall remain in full force and effect during the Committee's deliberations **and shall be incorporated into any successor Collective Bargaining Agreement** until such time as the Committee reaches agreement on any revisions to Article 12 or the process described herein is completed." To date, the Committee has not reached agreement on any revisions to Article 12. Therefore, the current Article 12 "shall be incorporated into any successor Collective Bargaining Agreement."

36.     The Act states that: "All matters pertaining to the discipline of sworn law enforcement personnel shall be retained by management and not be negotiable," and that "[t]his subsection shall apply to any collective bargaining agreements entered into with the Fraternal Order of Police/Metropolitan Police Department Labor Committee after September 30, 2020."

37.     The Act constitutes a change in the law which substantially and significantly impairs the contractual relationship between the D.C. Police Union and the Metropolitan Police Department by voiding the contractual requirement that Article 12 "shall be incorporated into any successor Collective Bargaining Agreement" between the parties. The Act thus relieves the Metropolitan Police Department of its contractual obligation and provides the D.C. Police Union with no recourse.

38.     The deprivation of the D.C. Police Union's contractual rights through the Act is not reasonable and necessary to serve an important public purpose. Instead, the Act only serves the illegitimate purpose of punishing and discriminating against the D.C. Police Union and

sworn law enforcement as a reaction to rising tensions and protests that threatened the public safety and residents of the District.

WHEREFORE, the D.C. Police Union requests that the Court: enter judgment in its favor against the Defendants:

1. Declaring that Section 116 of the Act is invalid and unconstitutional because it violates the Contracts Clause of the Constitution of the United States, 42 U.S.C. § 1983, and the District of Columbia Home Rule Act;

2. Permanently enjoining the approval, enactment, and enforcement of Section 116 of the Act;

3. Awarding the D.C. Police Union attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

4. Granting such other and further relief as the Court may deem just and proper.

**Count IV**
**Violation of Substantive Due Process Rights**
**Arising under the Fifth Amendment and the Fourteenth Amendment of**
**The Constitution of the United States, 42 U.S.C. § 1983,**
**and the District of Columbia Home Rule Act**
**Against All Defendants**

39.     Paragraphs 1-38 of this Complaint are restated and fully incorporated herein.

40.     The Due Process Clause of the Fifth Amendment to the Constitution of the United States contains a substantive due process component, which prohibits legislative enactments that prevent or infringe upon the exercise of fundamental economic rights, such as the right to contract, where the legislative act is not "justified by a rational legislative purpose." *Ass'n of Bituminous Contractors, Inc. v. Apfel*, 156 F.3d 1246, 1255 (D.C. Cir. 1998).

41.     The District of Columbia Home Rule Act, D.C. Code § 1-203.02 states that "the legislative power of the District shall extend to all rightful subjects of legislation within the

14

District consistent with the Constitution of the United States and the provisions of this chapter subject to all the restrictions and limitation imposed upon the states by the 10th section of the 1st article of the Constitution of the United States."

42.     Section 116 of the Act targets sworn law enforcement and eliminates their right to bargain and enter into a contract through the D.C. Police Union for terms directly related to discipline stemming from their employment.

43.     The right to bargain with management concerning the discipline of employees had been enjoyed by the D.C. Police Union and its members since the passage of the CMPA in 1979, and remains a right held by every other District of Columbia government employee and labor union.

44.     Section 116 is an arbitrary, severe, and permanent infringement upon the rights of the District's sworn law enforcement officers and the D.C. Police Union, to contract for terms inextricably linked to their employment with the Metropolitan Police Department. The alleged purpose of Section 116, as articulated by the Council, is defeated by the Act's arbitrary and exclusive targeting of members of the D.C. Police Union. Accordingly, Section 116 lacks, and is not justified by, a rational legislative purpose, and is a violation of the Plaintiff's fundamental right to contract and a property right and interest in employment, continued employment and protection from abusive discharge from employment without cause.

1.  Declaring that Section 116 of the Act is invalid and unconstitutional because it violates the Due Process Clause of the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the District of Columbia Home Rule Act

2.  Permanently enjoining the approval, enactment, and enforcement of Section 116 of the Act;

3. Awarding the D.C. Police Union attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

4. Granting such other and further relief as the Court may deem just and proper.

**<u>Jury Trial Demand</u>**

The plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Anthony M. Conti (D.C. Bar No. 479152)
Daniel J. McCartin (D.C. Bar No. 976580)
CONTI FENN LLC
36 South Charles Street, Suite 2501
Baltimore, Maryland 21201
Tel. (410) 837-6999
Fax: (410) 510-1647
tony@contifenn.com
dan@contifenn.com

*Counsel for Plaintiff*