# Exhibit

# # 1

ENROLLED ORIGINAL

AN ACT

**D.C. ACT 23-336**
————————

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

**JULY 22, 2020**

To provide, on an emergency basis, for comprehensive policing and justice reform for District residents and visitors, and for other purposes.

### TABLE OF CONTENTS

TITLE I. IMPROVING POLICE ACCOUNTABILITY AND TRANSPARENCY .............. 2

SUBTITLE A. PROHIBITING THE USE OF NECK RESTRAINTS ................................ 2

SUBTITLE B. IMPROVING ACCESS TO BODY-WORN CAMERA VIDEO RECORDINGS ..................................................................................................... 3

SUBTITLE C. OFFICE OF POLICE COMPLAINTS REFORMS ................................. 6

SUBTITLE D. USE OF FORCE REVIEW BOARD MEMBERSHIP EXPANSION ....... 7

SUBTITLE E. ANTI-MASK LAW REPEAL ................................................................... 8

SUBTITLE F. LIMITATIONS ON CONSENT SEARCHES ........................................ 8

SUBTITLE G. MANDATORY CONTINUING EDUCATION EXPANSION; RECONSTITUTING THE POLICE OFFICERS STANDARDS AND TRAINING BOARD .......................................................................................................... 10

SUBTITLE H. IDENTIFICATION OF MPD OFFICERS DURING FIRST AMENDMENT ASSEMBLIES AS LOCAL LAW ENFORCEMENT ........................... 11

SUBTITLE I. PRESERVING THE RIGHT TO JURY TRIAL ................................... 11

SUBTITLE J. REPEAL OF FAILURE TO ARREST CRIME ..................................... 12

SUBTITLE K. AMENDING MINIMUM STANDARDS FOR POLICE OFFICERS .... 12

SUBTITLE L. POLICE ACCOUNTABILITY AND COLLECTIVE BARGAINING AGREEMENTS ....................................................................................................... 12

1

ENROLLED ORIGINAL

SUBTITLE M. OFFICER DISCIPLINE REFORMS ........................................................... 12

SUBTITLE N. USE OF FORCE REFORMS ..................................................................... 13

SUBTITLE O. RESTRICTIONS ON THE PURCHASE AND USE OF MILITARY
WEAPONRY .............................................................................................................. 14

SUBTITLE P. LIMITATIONS ON THE USE OF INTERNATIONALLY BANNED
CHEMICAL WEAPONS, RIOT GEAR, AND LESS-LETHAL PROJECTILES ......... 15

SUBTITLE Q. POLICE REFORM COMMISSION .......................................................... 16

SUBTITLE R. METRO TRANSIT POLICE DEPARTMENT OVERSIGHT AND
ACCOUNTABILITY ................................................................................................... 17

TITLE II. BUILDING SAFE AND JUST COMMUNITIES ............................................... 20

SUBTITLE A. RESTORE THE VOTE ............................................................................. 20

TITLE III. REPEALS; APPLICABILITY; FISCAL IMPACT STATEMENT;
EFFECTIVE DATE ..................................................................................................... 21

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020".

TITLE I. IMPROVING POLICE ACCOUNTABILITY AND TRANSPARENCY
SUBTITLE A. PROHIBITING THE USE OF NECK RESTRAINTS
Sec. 101. The Limitation on the Use of the Chokehold Act of 1985, effective January 25, 1986 (D.C. Law 6-77; D.C. Official Code § 5-125.01 *et seq.*), is amended as follows:
(a) Section 2 (D.C. Official Code § 5-125.01) is amended to read as follows:
"Sec. 2. The Council of the District of Columbia finds and declares that law enforcement and special police officer use of neck restraints constitutes the use of lethal and excessive force. This force presents an unnecessary danger to the public. On May 25, 2020, Minneapolis Police Department officer Derek Chauvin murdered George Floyd by applying a neck restraint to Floyd with his knee for 8 minutes and 46 seconds. Hundreds of thousands, if not millions, of people in cities and states across the world, including in the District, have taken to the streets to peacefully protest injustice, racism, and police brutality against Black people and other people of color. Police brutality is abhorrent and does not reflect the District's values. It is the intent of the Council in the enactment of this act to unequivocally ban the use of neck restraints by law enforcement and special police officers.".
(b) Section 3 (D.C. Official Code § 5-125.02) is amended as follows:

2

ENROLLED ORIGINAL

(1) Paragraph (1) is repealed.

(2) Paragraph (2) is repealed.

(3) A new paragraph (3) is added to read as follows:

"(3) "Neck restraint" means the use of any body part or object to attempt to control or disable a person by applying pressure against the person's neck, including the trachea or carotid artery, with the purpose, intent, or effect of controlling or restricting the person's movement or restricting their blood flow or breathing.".

(c) Section 4 (D.C. Official Code § 5-125.03) is amended to read as follows:

"Sec. 4. Unlawful use of neck restraints by law enforcement officers and special police officers.

"(a) It shall be unlawful for:

"(1) Any law enforcement officer or special police officer ("officer") to apply a neck restraint; and

"(2) Any officer who applies a neck restraint and any officer who is able to observe another officer's application of a neck restraint to fail to:

"(A) Immediately render, or cause to be rendered, first aid on the person on whom the neck restraint was applied; or

"(B) Immediately request emergency medical services for the person on whom the neck restraint was applied.

"(b) Any officer who violates the provisions of subsection (a) of this section shall be fined no more than the amount set forth in section 101 of the Criminal Fine Proportionality Amendment Act of 2012, effective June 11, 2013 (D.C. Law 19-317; D.C. Official Code § 22-3571.01), or incarcerated for no more than 10 years, or both.".

Sec. 102. Section 3 of the Federal Law Enforcement Officer Cooperation Act of 1999, effective May 9 2000 (D.C. Law 13-100; D.C. Official Code § 5-302), is amended by striking the phrase "trachea and carotid artery holds" and inserting the phrase "neck restraints" in its place.

SUBTITLE B. IMPROVING ACCESS TO BODY-WORN CAMERA VIDEO RECORDINGS

Sec. 103. Section 3004 of the Body-Worn Camera Regulation and Reporting Requirements Act of 2015, effective October 22, 2015 (D.C. Law 21-36; D.C. Official Code § 5-116.33), is amended as follows:

(a) Subsection (a)(3) is amended by striking the phrase "interactions;" and inserting the phrase "interactions, and the results of those internal investigations, including any discipline imposed;" in its place.

(b) New subsections (c), (d), and (e) are added to read as follows:

"(c)(1) Notwithstanding any other law:

"(A) Within 5 business days after a request from the Chairperson of the Council Committee with jurisdiction over the Metropolitan Police Department, the Metropolitan Police Department shall provide unredacted copies of the requested body-worn camera recordings to the Chairperson. Such body-worn camera recordings shall not be publicly disclosed by the Chairperson or the Council;

"(B) The Mayor:

"(i) Shall, except as provided in paragraph (2) of this subsection:

"(I) Within 5 business days after an officer-involved death or the serious use of force, publicly release the names and body-worn camera recordings of all officers who committed the officer-involved death or serious use of force; and

"(II) By August 15, 2020, publicly release the names and body-worn camera recordings of all officers who have committed an officer-involved death since the Body-Worn Camera Program was launched on October 1, 2014; and

"(ii) May, on a case-by-case basis in matters of significant public interest and after consultation with the Chief of Police, the United States Attorney's Office for the District of Columbia, and the Office of the Attorney General, publicly release any other body-worn camera recordings that may not otherwise be releasable pursuant to a FOIA request.

"(2)(A) The Mayor shall not release a body-worn camera recording pursuant to paragraph (1)(B)(i) of this subsection if the following persons inform the Mayor, orally or in writing, that they do not consent to its release:

"(i) For a body-worn camera recording of an officer-involved death, the decedent's next of kin; and

"(ii) For a body-worn camera recording of a serious use of force, the individual against whom the serious use of force was used, or if the individual is a minor or unable to consent, the individual's next of kin.

"(B)(i) In the event of a disagreement between the persons who must consent to the release of a body-worn camera recording pursuant to subparagraph (A) of this paragraph, the Mayor shall seek a resolution in the Superior Court of the District of Columbia.

"(ii) The Superior Court of the District of Columbia shall order the release of the body-worn camera recording if it finds that the release is in the interests of justice.

"(d) Before publicly releasing a body-worn camera recording of an officer-involved death, the Metropolitan Police Department shall:

"(1) Consult with an organization with expertise in trauma and grief on best practices for creating an opportunity for the decedent's next of kin to view the body-worn camera recording in advance of its release;

"(2) Notify the decedent's next of kin of its impending release, including the date when it will be released; and

4

"(3) Offer the decedent's next of kin the opportunity to view the body-worn camera recording privately in a non-law enforcement setting in advance of its release, and if the next of kin wish to so view the body-worn camera recording, facilitate its viewing.

"(e) For the purposes of this subsection, the term:

"(1) "FOIA" means Title II of the District of Columbia Administrative Procedure Act, effective March 25, 1977 (D.C. Law 1-96; D.C. Official Code § 2-531 *et seq.*);

"(2) "Next of kin" shall mean the priority for next of kin as provided in Metropolitan Police Department General Order 401.08, or its successor directive; and

"(3) "Serious use of force" shall have the same meaning as that term is defined in MPD General Order 901.07, or its successor directive.".

Sec. 104. Chapter 39 of Title 24 of the District of Columbia Municipal Regulations is amended as follows:

(a) Section 3900 is amended as follows:

(1) Subsection 3900.9 is amended to read as follows:

"3900.9. Members may not review their BWC recordings or BWC recordings that have been shared with them to assist in initial report writing.".

(2) Subsection 3900.10 is amended to read as follows:

"3900.10. (a) Notwithstanding any other law, the Mayor:

"(1) Shall, except as provided in paragraph (b) of this subsection:

"(A) Within 5 business days after an officer-involved death or the serious use of force, publicly release the names and BWC recordings of all officers who committed the officer-involved death or serious use of force; and

"(B) By August 15, 2020, publicly release the names and BWC recordings of all officers who have committed an officer-involved death since the BWC Program was launched on October 1, 2014; and

"(2) May, on a case-by-case basis in matters of significant public interest and after consultation with the Chief of Police, the United States Attorney's Office for the District of Columbia, and the Office of the Attorney General, publicly release any other BWC recordings that may not otherwise be releasable pursuant to a FOIA request.

"(b)(1) The Mayor shall not release a BWC recording pursuant to paragraph (a)(1) of this subsection if the following persons inform the Mayor, orally or in writing, that they do not consent to its release:

"(A) For a BWC recording of an officer-involved death, the decedent's next of kin; and

"(B) For a BWC recording of a serious use of force, the individual against whom the serious use of force was used, or if the individual is a minor or is unable to consent, the individual's next of kin.

"(2)(A) In the event of a disagreement between the persons who must consent to the release of a BWC recording pursuant to subparagraph (1) of this paragraph, the Mayor shall seek a resolution in the Superior Court of the District of Columbia.

"(B) The Superior Court of the District of Columbia shall order the release of the BWC recording if it finds that the release is in the interests of justice.

"(c) Before publicly releasing a BWC recording of an officer-involved death, the Department shall:

"(1) Consult with an organization with expertise in trauma and grief on best practices for creating an opportunity for the decedent's next of kin to view the BWC recording in advance of its release;

"(2) Notify the decedent's next of kin of its impending release, including the date when it will be released; and

"(3) Offer the decedent's next of kin the opportunity to view the BWC recording privately in a non-law enforcement setting in advance of its release, and if the next of kin wish to so view the BWC recording, facilitate its viewing.".

(b) Section 3901.2 is amended by adding a new paragraph (a-1) to read as follows:

"(a-1) Recordings related to a request from or investigation by the Chairperson of the Council Committee with jurisdiction over the Department;".

(c) Section 3902.4 is amended to read as follows:

"3902.4. Notwithstanding any other law, within 5 business days after a request from the Chairperson of the Council Committee with jurisdiction over the Department, the Department shall provide unredacted copies of the requested BWC recordings to the Chairperson. Such BWC recordings shall not be publicly disclosed by the Chairperson or the Council.".

(d) Section 3999.1 is amended by inserting definitions between the definitions of "metadata" and "subject" to read as follows:

""Next of kin" shall mean the priority for next of kin as provided in MPD General Order 401.08, or its successor directive.

""Serious use of force" shall have the same meaning as that term is defined in MPD General Order 901.07, or its successor directive.".

SUBTITLE C. OFFICE OF POLICE COMPLAINTS REFORMS

Sec. 105. The Office of Citizen Complaint Review Establishment Act of 1998, effective March 26, 1999 (D.C. Law 12-208; D.C. Official Code § 5-1101 *et seq.*), is amended as follows:

(a) Section 5(a) (D.C. Official Code § 5-1104(a)) is amended by striking the phrase "There is established a Police Complaints Board ("Board"). The Board shall be composed of 5 members, one of whom shall be a member of the MPD, and 4 of whom shall have no current affiliation with any law enforcement agency." and inserting the phrase "There is established a Police Complaints Board ("Board"). The Board shall be composed of 9 members, which shall include one member from each Ward and one at-large member, none of whom, after the

**ENROLLED ORIGINAL**

expiration of the term of the currently serving member of the MPD, shall be affiliated with any law enforcement agency." in its place.

(b) Section 8 (D.C. Official Code § 5-1107) is amended as follows:

(1) A new subsection (g-1) is added to read as follows:

"(g-1)(1) If the Executive Director discovers evidence of abuse or misuse of police powers that was not alleged by the complainant in the complaint, the Executive Director may:

"(A) Initiate the Executive Director's own complaint against the subject police officer; and

"(B) Take any of the actions described in subsection (g)(2) through (6) of this section.

"(2) The authority granted pursuant to paragraph (1) of this subsection shall include circumstances in which the subject police officer failed to:

"(A) Intervene in or subsequently report any use of force incident in which the subject police officer observed another law enforcement officer, including an MPD officer, utilizing excessive force or engaging in any type of misconduct, pursuant to MPD General Order 901.07, its successor directive, or a similar local or federal directive; or

"(B) Immediately report to their supervisor any violations of the rules and regulations of the MPD committed by any other MPD officer, and each instance of their use of force or a use of force committed by another MPD officer, pursuant to MPD General Order 201.26, or any successor directive.".

(2) Subsection (h) is amended by striking the phrase "subsection (g)" and inserting the phrase "subsection (g) or (g-1)" in its place.

SUBTITLE D. USE OF FORCE REVIEW BOARD MEMBERSHIP EXPANSION
Sec. 106. Use of Force Review Board; membership.

(a) There is established a Use of Force Review Board ("Board"), which shall review uses of force as set forth by the Metropolitan Police Department in its written directives.

(b) The Board shall consist of the following 13 voting members, and may also include non-voting members at the Mayor's discretion:

(1) An Assistant Chief selected by the Chief of Police, who shall serve as the Chairperson of the Board;

(2) The Commanding Official, Special Operations Division, Homeland Security Bureau;

(3) The Commanding Official, Criminal Investigations Division, Investigative Services Bureau;

(4) The Commanding Official, Metropolitan Police Academy;

(5) A Commander or Inspector assigned to the Patrol Services Bureau;

(6) The Commanding Official, Recruiting Division;

(7) The Commanding Official, Court Liaison Division;

(8) Three civilian members appointed by the Mayor, pursuant to section 2(e) of the Confirmation Act of 1978, effective March 3, 1979 (D.C. Law 2-142; D.C. Official Code § 1- 523.01(e)), with the following qualifications and no current or prior affiliation with law enforcement:

(A) One member who has personally experienced the use of force by a law enforcement officer;

(B) One member of the District of Columbia Bar in good standing; and

(C) One District resident community member;

(9) Two civilian members appointed by the Council with the following qualifications and no current or prior affiliation with law enforcement:

(A) One member with subject matter expertise in criminal justice policy; and

(B) One member with subject matter expertise in law enforcement oversight and the use of force; and

(10) The Executive Director of the Office of Police Complaints.

Sec. 107. Section 2(e) of the Confirmation Act of 1978, effective March 3, 1979 (D.C. Law 2-142; D.C. Official Code § 1-523.01(e)), is amended as follows:

(a) Paragraph (38) is amended by striking the phrase "; and" and inserting a semicolon in its place.

(b) Paragraph (39) is amended by striking the period and inserting the phrase "; and" in its place.

(c) A new paragraph (40) is added to read as follows:

"(40) Use of Force Review Board, established by section 106 of the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020, passed on emergency basis on July 7, 2020 (Enrolled version of Bill 23-825).".

SUBTITLE E. ANTI-MASK LAW REPEAL

Sec. 108. The Anti-Intimidation and Defacing of Public or Private Property Criminal Penalty Act of 1982, effective March 10, 1983 (D.C. Law 4-203; D.C. Official Code § 22-3312 *et seq.*), is amended as follows:

(a) Section 4 (D.C. Official Code § 22-3312.03) is repealed.

(b) Section 5(b) (D.C. Official Code § 22-3312.04(b)) is amended by striking the phrase "or section 4 shall be" and inserting the phrase "shall be" in its place.

Sec. 109. Section 23-581(a-3) of the District of Columbia Official Code is amended by striking the phrase "sections 22-3112.1, 22-3112.2, and 22-3112.3" and inserting the phrase "sections 22-3112.1 and 22-3112.2" in its place.

SUBTITLE F. LIMITATIONS ON CONSENT SEARCHES

ENROLLED ORIGINAL

Sec. 110. Subchapter II of Chapter 5 of Title 23 of the District of Columbia Official Code is amended by adding a new section 23-526 to read as follows:

"§ 23–526. Limitations on consent searches.

"(a) In cases where a search is based solely on the subject's consent to that search, and is not executed pursuant to a warrant or conducted pursuant to an applicable exception to the warrant requirement, sworn members of District Government law enforcement agencies shall:

"(1) Prior to the search of a person, vehicle, home, or property:

"(A) Explain, using plain and simple language delivered in a calm demeanor, that the subject of the search is being asked to voluntarily, knowingly, and intelligently consent to a search;

"(B) Advise the subject that:

"(i) A search will not be conducted if the subject refuses to provide consent to the search; and

"(ii) The subject has a legal right to decline to consent to the search;

"(C) Obtain consent to search without threats or promises of any kind being made to the subject;

"(D) Confirm that the subject understands the information communicated by the officer; and

"(E) Use interpretation services when seeking consent to conduct a search of a person:

"(i) Who cannot adequately understand or express themselves in spoken or written English; or

"(ii) Who is deaf or hard of hearing.

"(2) If the sworn member is unable to obtain consent from the subject, refrain from conducting the search.

"(b) The requirements of subsection (a) of this section shall not apply to searches executed pursuant to a warrant or conducted pursuant to an applicable exception to the warrant requirement.

"(c)(1) If a defendant moves to suppress any evidence obtained in the course of the search for an offense prosecuted in the Superior Court of the District of Columbia, the court shall consider an officer's failure to comply with the requirements of this section as a factor in determining the voluntariness of the consent.

"(2) There shall be a presumption that a search was nonconsensual if the evidence of consent, including the warnings required in subsection (a), is not captured on body-worn camera or provided in writing.

"(d) Nothing in this section shall be construed to create a private right of action.".

ENROLLED ORIGINAL

SUBTITLE G. MANDATORY CONTINUING EDUCATION EXPANSION;
RECONSTITUTING THE POLICE OFFICERS STANDARDS AND TRAINING BOARD
        Sec. 111. Title II of the Metropolitan Police Department Application, Appointment, and
Training Requirements of 2000, effective October 4, 2000 (D.C. Law 13-160; D.C. Official
Code § 5-107.01 *et seq.*), is amended as follows:
        (a) Section 203(b) (D.C. Official Code § 5-107.02(b)) is amended as follows:
                (1) Paragraph (2) is amended by striking the phrase "biased-based policing" and
inserting the phrase "biased-based policing, racism, and white supremacy" in its place.
                (2) Paragraph (3) is amended to read as follows:
                "(3) Limiting the use of force and employing de-escalation tactics;".
                (3) Paragraph (4) is amended to read as follows:
                "(4) The prohibition on the use of neck restraints;".
                (4) Paragraph (5) is amended by striking the phrase "; and" and inserting a
semicolon in its place.
                (5) Paragraph (6) is amended by striking the period and inserting a semicolon in
its place.
                (6) New paragraphs (7) and (8) are added to read as follows:
                "(7) Obtaining voluntary, knowing, and intelligent consent from the subject of a
search, when that search is based solely on the subject's consent; and
                "(8) The duty of a sworn officer to report, and the method for reporting, suspected
misconduct or excessive use of force by a law enforcement official that a sworn member
observes or that comes to the sworn member's attention, as well as any governing District laws
and regulations and Department written directives.".
        (b) Section 204 (D.C. Official Code § 5-107.03) is amended as follows:
                (1) Subsection (a) is amended by striking the phrase "the District of Columbia
Police" and inserting the phrase "the Police" in its place.
                (2) Subsection (b) is amended as follows:
                        (A) The lead-in language is amended by striking the phrase "11 persons"
and inserting the phrase "15 persons" in its place.
                        (B) A new paragraph (2A) is added to read as follows:
                        "(2A) Executive Director of the Office of Police Complaints or the Executive
Director's designee;".
                        (C) Paragraph (3) is amended to read as follows:
                        "(3) The Attorney General for the District of Columbia or the Attorney General's
designee;".
                        (D) Paragraph (8) is amended by striking the period and inserting the
phrase "; and" in its place.
                        (E) Paragraph (9) is amended to read as follows:

10

"(9) Five community representatives appointed by the Mayor, one each with expertise in the following areas:

"(A) Oversight of law enforcement;

"(B) Juvenile justice reform;

"(C) Criminal defense;

"(D) Gender-based violence or LGBTQ social services, policy, or advocacy; and

"(E) Violence prevention or intervention.".

(3) Subsection (i) is amended by striking the phrase "promptly after the appointment and qualification of its members" and inserting the phrase "by September 1, 2020" in its place.

(c) Section 205(a) (D.C. Official Code § 5-107.04(a)) is amended by adding a new paragraph (9A) to read as follows:

"(9A) If the applicant has prior service with another law enforcement or public safety agency in the District or another jurisdiction, information on any alleged or sustained misconduct or discipline imposed by that law enforcement or public safety agency;".

## SUBTITLE H. IDENTIFICATION OF MPD OFFICERS DURING FIRST AMENDMENT ASSEMBLIES AS LOCAL LAW ENFORCEMENT

Sec. 112. Section 109 of the First Amendment Assemblies Act of 2004, effective April 13, 2005 (D.C. Law 15-352; D.C. Official Code § 5-331.09), is amended as follows:

(a) Designate the existing text as subsection (a).

(b) Add a new subsection (b) to read as follows:

"(b) During a First Amendment assembly, the uniforms and helmets of officers policing the assembly shall prominently identify the officers' affiliation with local law enforcement.".

## SUBTITLE I. PRESERVING THE RIGHT TO JURY TRIAL

Sec. 113. Section 16-705(b)(1) of the District of Columbia Official Code is amended as follows:

(a) Subparagraph (A) is amended by striking the phrase "; or" and inserting a semicolon in its place.

(b) Subparagraph (B) is amended by striking the phrase "; and" and inserting the phrase "; or" in its place.

(c) A new subparagraph (C) is added to read as follows:

"(C)(i) The defendant is charged with an offense under:

"(I) Section 806(a)(1) of An Act To establish a code of law for the District of Columbia, approved March 3, 1901 (31 Stat. 1322; D.C. Official Code § 22–404(a)(1));

"(II) Section 432a of the Revised Statutes of the District of Columbia (D.C. Official Code § 22–405.01); or

"(III) Section 2 of An Act To confer concurrent jurisdiction on the police court of the District of Columbia in certain cases, approved July 16, 1912 (37 Stat. 193; D.C. Official Code § 22–407); and

"(ii) The person who is alleged to have been the victim of the offense is a law enforcement officer, as that term is defined in section 432(a) of the Revised Statutes of the District of Columbia (D.C. Official Code § 22-405(a)); and".

SUBTITLE J. REPEAL OF FAILURE TO ARREST CRIME
Sec. 114. Section 400 of the Revised Statutes of the District of Columbia (D.C. Official Code § 5-115.03), is repealed.

SUBTITLE K. AMENDING MINIMUM STANDARDS FOR POLICE OFFICERS
Sec. 115. Section 202 of the Omnibus Police Reform Amendment Act of 2000, effective October 4, 2000 (D.C. Law 13-160; D.C. Official Code § 5-107.01), is amended by adding a new subsection (f) to read as follows:
"(f) An applicant shall be ineligible for appointment as a sworn member of the Metropolitan Police Department if the applicant:
"(1) Was previously determined by a law enforcement agency to have committed serious misconduct, as determined by the Chief by General Order;
"(2) Was previously terminated or forced to resign for disciplinary reasons from any commissioned or recruit or probationary position with a law enforcement agency; or
"(3) Previously resigned from a law enforcement agency to avoid potential, proposed, or pending adverse disciplinary action or termination.".

SUBTITLE L. POLICE ACCOUNTABILITY AND COLLECTIVE BARGAINING AGREEMENTS
Sec. 116. Section 1708 of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, effective March 3, 1979 (D.C. Law 2-139; D.C. Official Code § 1-617.08), is amended by adding a new subsection (c) to read as follows:
"(c)(1) All matters pertaining to the discipline of sworn law enforcement personnel shall be retained by management and not be negotiable.
"(2) This subsection shall apply to any collective bargaining agreements entered into with the Fraternal Order of Police/Metropolitan Police Department Labor Committee after September 30, 2020.".

SUBTITLE M. OFFICER DISCIPLINE REFORMS

12

Sec. 117. Section 502 of the Omnibus Public Safety Agency Reform Amendment Act of 2004, effective September 30, 2004 (D.C. Law 15-194; D.C. Official Code § 5-1031), is amended as follows:

(a) Subsection (a-1) is amended as follows:

(1) Paragraph (1) is amended by striking the phrase "subsection (b) of this section" and inserting the phrase "paragraph (1A) of this subsection and subsection (b) of this section" in its place.

(2) A new paragraph (1A) is added to read as follows:

"(1A) If the act or occurrence allegedly constituting cause involves the serious use of force or indicates potential criminal conduct by a sworn member or civilian employee of the Metropolitan Police Department, the period for commencing a corrective or adverse action under this subsection shall be 180 days, not including Saturdays, Sundays, or legal holidays, after the date that the Metropolitan Police Department had notice of the act or occurrence allegedly constituting cause.".

(3) Paragraph (2) is amended by striking the phrase "paragraph (1)" and inserting the phrase "paragraphs (1) and (1A)" in its place.

(b) Subsection (b) is amended by striking the phrase "the 90-day period" and inserting the phrase "the 90-day or 180-day period, as applicable," in its place.

Sec. 118. Section 6-A1001.5 of Chapter 10 of Title 6 of the District of Columbia Municipal Regulations is amended by striking the phrase "reduce the penalty" and inserting the phrase "reduce or increase the penalty" in its place.

SUBTITLE N. USE OF FORCE REFORMS

Sec. 119. Use of deadly force.

(a) For the purposes of this section, the term:

(1) "Deadly force" means any force that is likely or intended to cause serious bodily injury or death.

(2) "Deadly weapon" means any object, other than a body part or stationary object, that in the manner of its actual, attempted, or threatened use, is likely to cause serious bodily injury or death.

(3) "Serious bodily injury" means extreme physical pain, illness, or impairment of physical condition, including physical injury, that involves:

(A) A substantial risk of death;

(B) Protracted and obvious disfigurement;

(C) Protracted loss or impairment of the function of a bodily member or organ; or

(D) Protracted loss of consciousness.

(b) A law enforcement officer shall not use deadly force against a person unless:

13

(1) The law enforcement officer reasonably believes that deadly force is immediately necessary to protect the law enforcement officer or another person, other than the subject of the use of deadly force, from the threat of serious bodily injury or death;

(2) The law enforcement officer's actions are reasonable, given the totality of the circumstances; and

(3) All other options have been exhausted or do not reasonably lend themselves to the circumstances.

(c) A trier of fact shall consider:

(1) The reasonableness of the law enforcement officer's belief and actions from the perspective of a reasonable law enforcement officer; and

(2) The totality of the circumstances, which shall include:

(A) Whether the subject of the use of deadly force:

(i) Possessed or appeared to possess a deadly weapon; and

(ii) Refused to comply with the law enforcement officer's lawful order to surrender an object believed to be a deadly weapon prior to the law enforcement officer using deadly force;

(B) Whether the law enforcement officer engaged in de-escalation measures prior to the use of deadly force, including taking cover, waiting for back-up, trying to calm the subject of the use of force, or using non-deadly force prior to the use of deadly force; and

(C) Whether any conduct by the law enforcement officer prior to the use of deadly force increased the risk of a confrontation resulting in deadly force being used.

SUBTITLE O. RESTRICTIONS ON THE PURCHASE AND USE OF MILITARY WEAPONRY

Sec. 120.  Limitations on military weaponry acquired by District law enforcement agencies.

(a) Beginning in Fiscal Year 2021, District law enforcement agencies shall not acquire the following property through any program operated by the federal government:

(1) Ammunition of .50 caliber or higher;

(2) Armed or armored aircraft or vehicles;

(3) Bayonets;

(4) Explosives or pyrotechnics, including grenades;

(5) Firearm mufflers or silencers;

(6) Firearms of .50 caliber or higher;

(7) Firearms, firearm accessories, or other objects, designed or capable of launching explosives or pyrotechnics, including grenade launchers; and

(8) Remotely piloted, powered aircraft without a crew aboard, including drones.

**ENROLLED ORIGINAL**

(b)(1) If a District law enforcement agency requests property through a program operated by the federal government, the District law enforcement agency shall publish notice of the request on a publicly accessible website within 14 days after the date of the request.

(2) If a District law enforcement agency acquires property through a program operated by the federal government, the District law enforcement agency shall publish notice of the acquisition on a publicly accessible website within 14 days after the date of the acquisition.

(c) District law enforcement agencies shall disgorge any property described in subsection (a) of this section that the agencies currently possess within 180 days after the effective date of this act.

SUBTITLE P. LIMITATIONS ON THE USE OF INTERNATIONALLY BANNED CHEMICAL WEAPONS, RIOT GEAR, AND LESS-LETHAL PROJECTILES

Sec. 121. The First Amendment Assemblies Act of 2004, effective April 13, 2005 (D.C. Law 15-352; D.C. Official Code § 5-331.01 *et seq.*), is amended as follows:

(a) Section 102 (D.C. Official Code § 5-331.02) is amended as follows:

(1) Paragraphs (1) and (2) are redesignated as paragraphs (2) and (4) respectively.

(2) A new paragraph (1) is added to read as follows:

"(1) "Chemical irritant" means tear gas or any chemical that can rapidly produce sensory irritation or disabling physical effects in humans, which disappear within a short time following termination of exposure, or any substance prohibited by the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on their Destruction, effective April 29, 1997.".

(3) A new paragraph (3) is added to read as follows:

"(3) "Less-lethal projectiles" means any munition that may cause bodily injury or death through the transfer of kinetic energy and blunt force trauma. The term "less-lethal projectiles" includes rubber or foam-covered bullets and stun grenades.".

(b) Section 116 (D.C. Official Code § 5-331.16) is amended to read as follows:

"Sec. 116. Use of riot gear and riot tactics at First Amendment assemblies.

"(a)(1) No officers in riot gear may be deployed in response to a First Amendment assembly unless there is an immediate risk to officers of significant bodily injury. Any deployment of officers in riot gear:

"(A) Shall be consistent with the District's policy on First Amendment assemblies; and

"(B) May not be used as a tactic to disperse a First Amendment assembly.

"(2) Following any deployment of officers in riot gear in response to a First Amendment assembly, the commander at the scene shall make a written report to the Chief of Police within 48 hours, and that report shall be available to the public.

"(b)(1) Chemical irritants shall not be used by MPD to disperse a First Amendment assembly.

15

"(2) The Mayor shall request that any federal law enforcement agency operating in the District refrain from the use of chemical irritants to disperse a First Amendment assembly.

"(c)(1) Less-lethal projectiles shall not be used by MPD to disperse a First Amendment assembly.

"(2) The Mayor shall request that any federal law enforcement agency operating in the District refrain from the use of less-lethal projectiles to disperse a First Amendment assembly.".

SUBTITLE Q. POLICE REFORM COMMISSION

Sec. 122. Police Reform Commission.

(a) There is established, supported by the Council's Committee of the Whole, a Police Reform Commission ("Commission") to examine policing practices in the District and provide evidence-based recommendations for reforming and revisioning policing in the District.

(b)(1) The Commission shall be comprised of 20 representatives from among the following entities:

(A) Non-law enforcement District government agencies;

(B) The Office of the Attorney General for the District of Columbia;

(C) Criminal and juvenile justice reform organizations;

(D) Black Lives Matter DC;

(E) Educational institutions;

(F) Parent-led advocacy organizations;

(G) Student- or youth-led advocacy organizations;

(H) Returning citizen organizations;

(I) Victim services organizations;

(J) Social services organizations;

(K) Mental and behavioral health organizations;

(L) Small businesses;

(M) Faith-based organizations; and

(N) Advisory Neighborhood Commissions.

(2) The Chairman of the Council shall:

(A) Appoint the Commission representatives no later than July 22, 2020; and

(B) Designate a representative who is not employed by the District government as the Commission's Chairperson.

(c)(1) The Commission shall submit its recommendations in a report to the Mayor and Council by December 31, 2020.

(2) The report required by paragraph (1) of this subsection shall include analyses and recommendations on the following topics:

(A) The role of sworn and special police officers in District schools;

(B) Alternatives to police responses to incidents, such as community-based, behavioral health, or social services co-responders;

(C) Police discipline;

(D) The integration of conflict resolution strategies and restorative justice practices into policing; and

(E) The provisions of the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020, passed on emergency basis on July 7, 2020 (Enrolled version of Bill 23-825).

(d) The Commission shall sunset upon the delivery of its report or on December 31, 2020, whichever is later.

SUBTITLE R. METRO TRANSIT POLICE DEPARTMENT OVERSIGHT AND ACCOUNTABILITY

Sec. 123. Section 76 of Article XVI of Title III of the Washington Metropolitan Area Transit Regulation Compact, approved November 6, 1966 (80 Stat. 1324; D.C. Official Code § 9-1107.01(76)), is amended as follows:

(a) Subsection (f) is amended by adding a new paragraph (1A) to read as follows:

"(1A) prohibit the use of enforcement quotas to evaluate, incentivize, or discipline members, including with regard to the number of arrests made or citations or warnings issued;".

(b) A new subsection (i) is added to read as follows:

"(i)(1) The Authority shall establish a Police Complaints Board to review complaints filed against the Metro Transit Police.

"(2) The Police Complaints Board shall comprise eight members, two civilian members appointed by each Signatory, and two civilian members appointed by the federal government.

"(3) Members of the Police Complaints Board shall not be Authority employees and shall have no current affiliation with law enforcement.

"(4) Members of the Police Complaints Board shall serve without compensation but may be reimbursed for necessary expenses incurred as incident to the performance of their duties.

"(5) The Police Complaints Board shall appoint a Chairperson and Vice-Chairperson from among its members.

"(6) Four members of the Police Complaints Board shall constitute a quorum, and no action by the Police Complaints Board shall be effective unless a majority of the Police Complaints Board present and voting, which majority shall include at least one member from each Signatory, concur therein.

"(7) The Police Complaints Board shall meet at least monthly and keep minutes of its meetings.

17

"(8) The Police Complaints Board, through its Chairperson, may employ qualified persons or utilize the services of qualified volunteers, as necessary, to perform its work, including the investigation of complaints.

"(9) The duties of the Police Complaints Board shall include:

"(A) Adopting rules and regulations governing its meetings, minutes, and internal processes; and

"(B) With respect to the Metro Transit Police, reviewing:

"(i) The number, type, and disposition of citizen complaints received, investigated, sustained, or otherwise resolved;

"(ii) The race, national origin, gender, and age of the complainant and the subject officer or officers;

"(iii) The proposed and actual discipline imposed on an officer as a result of any sustained citizen complaint;

"(iv) All use of force incidents, serious use of force incidents, and serious physical injury incidents; and

"(v) Any in-custody death.

"(10) The Police Complaints Board shall have the authority to receive complaints against members of the Metro Transit Police, which shall be reduced to writing and signed by the complainant, that allege abuse or misuse of police powers by such members, including:

"(A) Harassment;

"(B) Use of force;

"(C) Use of language or conduct that is insulting, demeaning, or humiliating;

"(D) Discriminatory treatment based upon a person's race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, physical disability, matriculation, political affiliation, source of income, or place of residence or business;

"(E) Retaliation against a person for filing a complaint; and

"(F) Failure to wear or display required identification or to identify oneself by name and badge number when requested to do so by a member of the public.

"(11) If the Metro Transit Police receives a complaint containing subject matter that is covered by paragraph (10) of this subsection, the Metro Transit Police shall transmit the complaint to the Police Complaints Board within 3 business days after receipt.

"(12) The Police Complaints Board shall have timely and complete access to information and supporting documentation specifically related to the Police Complaints Board's duties and authority under paragraphs (9) and (10) of this subsection.

"(13) The Police Complaints Board shall have the authority to dismiss, conciliate, mediate, investigate, adjudicate, or refer for further action to the Metro Transit Police a complaint received under paragraph (10) of this subsection.

ENROLLED ORIGINAL

"(14)(A) If deemed appropriate by the Police Complaints Board, and if the parties agree to participate in a conciliation process, the Police Complaints Board may attempt to resolve a complaint by conciliation.

"(B) The conciliation of a complaint shall be evidenced by a written agreement signed by the parties which may provide for oral apologies or assurances, written undertakings, or any other terms satisfactory to the parties. No oral or written statements made in conciliation proceedings may be used as a basis for any discipline or recommended discipline against a subject police officer or officers or in any civil or criminal litigation.

"(15) If the Police Complaints Board refers the complaint to mediation, the Board shall schedule an initial mediation session with a mediator. The mediation process may continue as long as the mediator believes it may result in the resolution of the complaint. No oral or written statement made during the mediation process may be used as a basis for any discipline or recommended discipline of the subject police officer or officers, nor in any civil or criminal litigation, except as otherwise provided by the rules of the court or the rules of evidence.

"(16) If the Police Complaints Board refers a complaint for investigation, the Board shall assign an investigator to investigate the complaint. When the investigator completes the investigation, the investigator shall summarize the results of the investigation in an investigative report which, along with the investigative file, shall be transmitted to the Board, which may order an evidentiary hearing.

"(17) The Police Complaints Board may, after an investigation, assign a complaint to a complaint examiner, who shall make written findings of fact regarding all material issues of fact, and shall determine whether the facts found sustain or do not sustain each allegation of misconduct. If the complaint examiner determines that one or more allegations in the complaint is sustained, the Police Complaints Board shall transmit the entire complaint file, including the merits determination of the complaint examiner, to the Metro Transit Police for appropriate action.

"(18) Employees of the Metro Transit Police shall cooperate fully with the Police Complaints Board in the investigation and adjudication of a complaint. An employee of the Metro Transit Police shall not retaliate, directly or indirectly, against a person who files a complaint under this subsection.

"(19) When, in the determination of the Police Complaints Board, there is reason to believe that the misconduct alleged in a complaint or disclosed by an investigation of a complaint may be criminal in nature, the Police Complaints Board shall refer the matter to the appropriate authorities for possible criminal prosecution, along with a copy of all of the Police Complaints Board's files relevant to the matter being referred; provided, that the Police Complaints Board shall make a record of each referral, and ascertain and record the disposition of each matter referred and, if the appropriate authorities decline in writing to prosecute, the Police Complaints Board shall resume its processing of the complaint.

"(20) Within 60 days before the end of each fiscal year, the Police Complaints Board shall transmit to the Board and the Signatories an annual report of its operations, including any policy recommendations.".

TITLE II. BUILDING SAFE AND JUST COMMUNITIES
SUBTITLE A. RESTORE THE VOTE
Sec. 201. The District of Columbia Election Code of 1955, approved August 12, 1955 (69 Stat. 669; D.C. Official Code § 1-1001.01 *et seq.*), is amended as follows:
(a) Section 2(2) (D.C. Official Code § 1–1001.02(2)) is amended as follows:
(1) Subparagraph (C) is amended by striking the semicolon and inserting the phrase "; and" in its place.
(2) Subparagraph (D) is repealed.
(b) Section 5(a) (D.C. Official Code § 1-1001.05(a)) is amended by adding new paragraphs (9B) and (9C) to read as follows:
"(9B) In advance of any applicable voter registration or absentee ballot submission deadlines, provide, to every qualified elector in the Department of Corrections' care or custody, and, beginning January 1, 2021, endeavor to provide to every qualified elector in the Bureau of Prisons' care or custody:
"(A) A voter registration form;
"(B) A voter guide;
"(C) Educational materials about the importance of voting and the right of an individual currently incarcerated or with a criminal record to vote in the District; and
"(D) Without first requiring an absentee ballot application to be submitted, an absentee ballot;
"(9C) Beginning January 1, 2021, upon receiving information pursuant to section 7(k)(3), (4), or (4A) from the Superior Court of the District of Columbia, the United States District Court for the District of Columbia, or the Bureau of Prisons, notify a qualified elector incarcerated for a felony of the qualified elector's right to vote;".
(c) Section 7(k) (D.C. Official Code § 1–1001.07(k)) is amended as follows:
(1) Paragraph (1) is amended by striking the phrase "registrant, upon notification of a registrant's incarceration for a conviction of a felony" and inserting the phrase "registrant," in its place.
(2) A new paragraph (4A) is added to read as follows:
"(4A) Beginning on January 1, 2021, at least monthly, the Board shall request from the Bureau of Prisons the name, location of incarceration, and contact information for each qualified elector in the Bureau of Prisons' care or custody.".

ENROLLED ORIGINAL

Sec. 202. Section 8 of An Act To create a Department of Corrections in the District of Columbia, effective April 26, 2019 (D.C. Law 22-309; D.C. Official Code § 24-211.08), is amended by adding a new subsection (b-1) to read as follows:

"(b-1) Within 10 business days after the effective date of the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020, passed on emergency basis on July 7, 2020 (Enrolled version of Bill 23-825) ("act"), the Department shall notify eligible individuals in its care or custody of their voting rights pursuant to section 201 of the act.".

TITLE III. REPEALS; APPLICABILITY; FISCAL IMPACT STATEMENT; EFFECTIVE DATE
Sec. 301. Repeals.
The Comprehensive Policing and Justice Reform Emergency Amendment Act of 2020, passed on emergency basis on June 9, 2020 (Enrolled version of Bill 23-774), is repealed.

Sec. 302. Applicability.
(a) Section 110 shall apply as of August 15, 2020.
(b) Section 123 shall apply after the enactment of concurring legislation by the State of Maryland and the Commonwealth of Virginia, the signing and execution of the legislation by the Mayor of the District of Columbia and the Governors of Maryland and Virginia, and approval by the United States Congress.
(c) Section 301 shall apply as of July 7, 2020.

Sec. 303. Fiscal impact statement.
The Council adopts the fiscal impact statement of the Budget Director as the fiscal impact statement required by section 4a of the General Legislative Procedures Act of 1975, approved October 16, 2006 (120 Stat. 2038; D.C. Official Code § 1-301.47a).

Sec. 304. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto), and shall remain in effect for no longer than 90 days, as provided for emergency acts of the Council of the District of Columbia in section

**ENROLLED ORIGINAL**

412(a) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 788; D.C. Official Code § 1-204.12(a)).

_____
Chairman
Council of the District of Columbia

_____
Mayor
District of Columbia
APPROVED
July 22, 2020

22



# COUNCIL OF THE DiSTRICT OF COLUMBIA

## WASHINGTON, DC, 20004

Docket No. B23-0825

[  ] ITEM ON CONSENT CALENDAR

[ X ] ACTION                                     Final Reading

[ X ] VOTE DATE                                  Jul 07, 2020

[  ] VOICE VOTE

    RECORDED VOTE ON REQUEST

ABSENT

[ X ] ROLL CALL VOTE – Result                    Passed

| Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chairman Mendelson | X | | | | | Grosso | X | | | | | Silverman | X | | | | |
| Allen | X | | | | | McDuffie | X | | | | | T. White | X | | | | |
| Bonds | X | | | | | Nadeau | X | | | | | Todd | X | | | | |
| Cheh | X | | | | | Pinto | X | | | | | | | | | | |
| Gray | X | | | | | R. White | X | | | | | | | | | | |

| X - Indicate Vote | AB – Absent | NV - Present, Not Voting | Rec - Recused |
|---|---|---|---|

CERTIFICATION RECORD

_____
Secretary to the Council

7/8/2020
Date