UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRATERNAL ORDER OF POLICE,
METROPOLITAN POLICE
DEPARTMENT LABOR COMMITTEE,
D.C. POLICE UNION,

     Plaintiff,

        v.

DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

Civil Action No. 20-2130 (JEB)

## MEMORANDUM OPINION

The Union that represents Metropolitan Police Department officers brought this action to enjoin the District of Columbia from changing its law to deprive the Union of the ability to collectively bargain over disciplinary procedures.  Late last year, this Court dismissed the case without prejudice, finding that Plaintiff had failed to state a claim.  The Union now asks for another chance.  It seeks to add facts to its Complaint that it contends better sustain each of its five counts.  Before the Court may entertain that request, however, it must determine whether the Union has satisfied the stringent criteria Federal Rule of Civil Procedure 59(e) imposes to vacate a final judgment.  As it plainly has not, the Court will deny Plaintiff's Motion to Alter or Amend the Judgment as well as its Motion to Amend the Complaint.

I.     **Background**

The Court has previously set forth the underlying facts of the case and assumes the reader's familiarity with that Opinion.  See Fraternal Ord. of Police, Metro. Police Dep't Lab. Comm., D.C. Police Union v. D.C., 2020 WL 6484312, at *1 (D.D.C. Nov. 4, 2020).  In brief,

the Union has long negotiated with the City collective-bargaining agreements governing many topics, including disciplinary procedures.  Id.  Following the murder of George Floyd and the protests of "injustice, racism, and police brutality against Black people and other people of color," id. (quoting ECF No. 1 (Compl.), ¶ 8), the Council of the District of Columbia passed the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020.  Id.; see also ECF No. 3-4 (Act).  Section 116 of the Act provides that in any collective-bargaining agreement that the City and the Union enter into after September 30, 2020, "[a]ll matters pertaining to the discipline of sworn law enforcement personnel shall be retained by management and not be negotiable."  Fraternal Ord. of Police, 2020 WL 6484312, at *1 (quoting Act at 12).

Plaintiff Fraternal Order of Police, Metropolitan Police Department Labor Committee, D.C. Police Union filed a Complaint alleging that Section 116 deprives its members of numerous constitutional rights and also violates D.C.'s Home Rule Act.  Id.; see also D.C. Code § 1-203.02.  Specifically, it asserted that the Act violates the Equal Protection Clause because it discriminatorily restricts the bargaining rights of sworn law-enforcement officers, but no other District employee or labor union, and lacks any rational connection to a legitimate government objective.  See Compl., ¶¶ 17–24; Fraternal Ord. of Police, 2020 WL 6484312, at *2.  Next, it alleged that the Act violates the Bill of Attainder Clause by imposing punishment on sworn law-enforcement officers.  See Compl., ¶¶ 25–30; ECF No. 3-1 (Pl. MSJ) at 13–16; Fraternal Ord. of Police, 2020 WL 6484312, at *4.  It also pled a Contract Clause claim, contending that the Act is unconstitutional because Article 12 of the Union's CBA covers disciplinary issues and the agreement provides that those measures "shall be incorporated into any successor [CBA]."  ECF No. 3-5 (CBA) at 13–14; Compl., ¶¶ 31–38; Fraternal Ord. of Police, 2020 WL 6484312, at *1, 7–8.  Rounding out its constitutional claims, it alleged that the Act deprives its members of their

substantive-due-process rights to bargain and enter into a contract for terms related to discipline in their employment. See Compl., ¶¶ 39–44; Fraternal Ord. of Police, 2020 WL 6484312, at *9–10. It further asserted that those same deprivations violate D.C.'s Home Rule Act. See Compl., ¶¶ 20, 28, 33, 41; Fraternal Ord. of Police, 2020 WL 6484312, at *2.

The Union then moved for summary judgment on all claims, see ECF No. 3-1 (Pl. MSJ), and the District opposed and added a Cross-Motion to Dismiss or for Summary Judgment. See ECF No. 9 (Def. MTD). The Court granted Defendants' Motion to Dismiss, rendering the summary-judgment motions moot. Fraternal Ord. of Police, 2020 WL 6484312, at *1, 10. The Union now moves to correct or vacate the judgment and for leave to file an Amended Complaint. See ECF No. 17-1 (Motion to Alter Judgment); ECF No. 18 (Motion to Amend).

## II.    Legal Standard

Rule 60(a) permits a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." It "only can be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." Fanning v. George Jones Excavating, L.L.C., 312 F.R.D. 238, 239 (D.D.C. 2015) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure Civil § 2854 (3d ed. 2012)); see also 12 J. Moore et al., Moore's Federal Practice § 60.11[1][a] (3d ed. 2015) ("Rule 60(a) applies when the record indicates that the court intended to do one thing but, by virtue of a clerical mistake or oversight, did another.").

Rule 59(e), alternatively, permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry, as it was here. A court must apply a "stringent" standard when evaluating such motions. Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004). "A Rule 59(e) motion is discretionary and need not be granted unless the

district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citation omitted); see also Wright & Miller, § 2810.1 (stating that "four basic grounds" for Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "prevent[ion of] manifest injustice," and "intervening change in controlling law"). Rule 59(e), moreover, "is not a vehicle to present a new legal theory that was available prior to judgment," Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012), or "to relitigate old matters." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (citation omitted); see also New LifeCare Hosps. of N. Carolina LLC v. Azar, 466 F. Supp. 3d 124, 129 (D.D.C. 2020). "The strictness with which [Rule 59(e)] motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 77 (D.D.C. 2013) (quoting CFTC v. McGraw-Hill Cos., 403 F. Supp. 2d 34, 36 (D.D.C. 2005)), aff'd, 782 F.3d 9 (D.C. Cir. 2015)

Finally, as to amending the complaint under Rule 15(a), leave to do so ordinarily "shall be freely given when justice so requires." Ciralsky, 355 F.3d at 673. "The entry of final judgment, however, is a game changer." Trudel v. SunTrust Bank, 325 F.R.D. 23, 25 (D.D.C. 2018), aff'd, 924 F.3d 1281 (D.C. Cir. 2019). At that point, "a court cannot permit an amendment unless the plaintiff 'first satisf[ies] Rule 59(e)'s more stringent standard' for setting aside that judgment." Ciralsky, 355 F.3d at 673 (quoting Firestone, 76 F.3d at 1208); see also DeGeorge v. United States, 521 F. Supp. 2d 35, 40–41 (D.D.C. 2007). In other words, "[l]eave to amend a complaint after judgment may be granted only after the Court vacates that judgment"

under Rule 59(e).  Foster v. Sedgwick Claims Mgmt. Servs., Inc., 159 F. Supp. 3d 11, 16

(D.D.C. 2015).  If the plaintiff does not prevail on her motion to vacate the judgment, that is the

end of the matter.  The Court must deny the Rule 15(a) motion as moot.  Ciralsky, 355 F.3d at

673; Mohammadi, 947 F. Supp. 2d at 78–79; Dun v. Transamerica Premier Life Ins. Co., No. 19-

40, 2020 WL 4001472, at *6 (D.D.C. July 15, 2020) (finding motion to amend moot after

denying Rule 59(e) motion).

### III.    Analysis

Because Plaintiff argues that the Court made a clerical error that, if corrected, would

allow it to amend its Complaint without vacatur of the judgment, the Court begins there.  Finding

no such error, it then turns to Plaintiff's Motion to Alter the Judgment and concludes by

addressing the Motion to Amend.

### A.   Clerical Error

The Union invokes Rule 60(a) in asking the Court to clarify or correct its Order

dismissing the case without prejudice, as it believes the Court intended to dismiss only the

Complaint.  See Motion to Alter Judgment at 4–7; see also ECF No. 22 (Alter Judgment Reply)

at 1–4.  As the Circuit explained in Ciralsky, that minor difference has great effect:  "[T]he

dismissal without prejudice of a complaint [is] not final . . . because the plaintiff is free to amend

his pleading and continue the litigation[;] . . . dismissal without prejudice of an action (or 'case'),

by contrast . . . end[s] th[e] suit . . . [and] is final."  355 F.3d at 666 (internal quotation marks and

citations omitted); see also N. Am. Butterfly Ass'n v. Wolf, 977 F.3d 1244, 1253 (D.C. Cir.

2020) (explaining same).  In the latter scenario, a plaintiff "may be able to re-file because the

dismissal was without prejudice," Ciralsky, 355 F.3d at 667 (emphasis removed), but cannot

amend his complaint without first succeeding on a Rule 59 motion to vacate.  Id. at 673.  From

the briefing, it appears that the Union believes that the Court was mistaken or confused about this principle.

The Court was not — indeed, it is well aware of <u>Ciralsky</u> and has cited this holding numerous times.  <u>E.g.</u>, <u>Citizens for Resp. & Ethics in Washington v. Pompeo</u>, No. 19-3324, 2020 WL 1667638, at *7 (D.D.C. Apr. 3, 2020) (citing <u>Ciralsky</u>, dismissing "only the Complaint and not the entire case," and permitting filing of amended complaint); <u>Crawford v. Barr</u>, No. 17-798, 2019 WL 6525652, at *4 (D.D.C. Dec. 4, 2019) (citing <u>Ciralsky</u> and dismissing "First Amended Complaint and not the entire case"); <u>Farrar v. Wilkie</u>, No. 18-1585, 2019 WL 3037869, at *2 (D.D.C. July 11, 2019) (citing <u>Ciralsky</u> for "examining difference between dismissing complaint and entire action" and dismissing "only the Complaint" "[i]nstead of dismissing the entire action"); <u>Klein v. Mnuchin</u>, No. 18-769, 2019 WL 108878, at *2 (D.D.C. Jan. 4, 2019) (citing <u>Ciralsky</u> and dismissing "only the Complaint").  In granting the District's Motion, the Court wrote — in both the Opinion and the Order — that it was dismissing the <u>case</u>.  <u>Fraternal Ord. of Police</u>, 2020 WL 6484312, at *1 ("[T]he Court will dismiss the case."); <u>id.</u> at *10 ("For the foregoing reasons, the Court dismisses the case without prejudice."); <u>see also</u> ECF No. 15 (MTD Order) ("[T]he Court ORDERS that . . . [t]he case is DISMISSED WITHOUT PREJUDICE.").  Although it did mention in the "Legal Standard" section that it "dismisse[d] all claims," <u>Fraternal Ord. of Police</u>, 2020 WL 6484312, at *2, no confusion could exist given the unequivocal language from both the Opinion and the Order dismissing "the case."  In so proceeding, the Court left the Union with the options of moving to alter or amend the judgment or appealing. <u>See</u> <u>Ciralsky</u>, 355 F.3d at 666–67, 673.  As Plaintiff has chosen door number one, the Court will turn now to that Motion.

B.  <u>Motion to Alter or Amend the Judgment</u>

At the outset, the Court notes that Plaintiff has not sought to vacate the judgment in light of an "intervening change of controlling law" or the "availability of new evidence."  <u>Firestone</u>, 76 F.3d at 1208.  Instead, it asserts that the Court "need[s] to correct a clear error [and] prevent manifest injustice."  <u>Id.</u>; <u>see also</u> Motion to Alter Judgment at 8–19; Alter Judgment Reply at 5–9.  This argument must clear a high hurdle.  <u>See</u> <u>Leidos, Inc. v. Hellenic Republic</u>, 881 F.3d 213, 217 (D.C. Cir. 2018) (describing Rule 59(e) grant as "an extraordinary measure").  Granting a Rule 59(e) motion for clear error requires the Court to conclude that the "final judgment [was] 'dead wrong.'"  <u>Mohammadi</u>, 947 F. Supp. 2d at 78 (quoting <u>Lardner v. FBI</u>, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)).  Manifest injustice is likewise an "exceptionally narrow concept."  <u>Slate v. Am. Broad. Cos., Inc.</u>, 12 F. Supp. 3d 30, 35 (D.D.C. 2013).  It "does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered."  <u>Roane v. Gonzales</u>, 832 F. Supp. 2d 61, 64 (D.D.C. 2011) (quoting <u>Davis v. District of Columbia</u>, 413 F. App'x 308, 311 (D.C. Cir. 2011)); <u>see also Slate</u>, 12 F. Supp. 3d at 35.  The Union does not come close to satisfying those standards.

1.  *Clear Error*

Plaintiff first argues that the Court committed clear error because it improperly "applied the presumptions given to the legislature under rational-basis review <u>over</u> the presumptions granted to [Plaintiff] under Rule 12(b)(6)."  Motion to Alter Judgment at 8–9, 13.  This was erroneous, according to the Union, because "deference given to legislation under rational-basis review must give way to the presumptions afforded to a plaintiff under Rule 12(b)(6)."  <u>Id.</u> at 9. This mistake allegedly infected the dismissal of not only the equal-protection count, but also the

due-process count (where the Court relied on its equal-protection analysis).  Our Circuit, however, disagrees with the Union's proposed interaction of the two standards.

The court upstairs has been clear: "In order to defeat the [defendant's] motion to dismiss their equal protection claim, [plaintiffs] 'must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'"  Dixon v. District of Columbia, 666 F.3d 1337, 1342 (D.C. Cir. 2011) (emphasis added) (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992)).  This means that, "[e]ven at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not 'any reasonabl[y] conceivable state of facts that could provide a rational basis for the classification.'"  Hettinga v. United States, 677 F.3d 471, 479 (D.C. Cir. 2012) (quoting Dumaguin v. Sec'y of Health & Human Servs., 28 F.3d 1218, 1222 (D.C. Cir. 1994)).  That is the law that the Court applied.  See Fraternal Ord. of Police, 2020 WL 6484312, at *2 (citing, inter alia, Dixon and Hettinga in setting forth standard).

The very cases Plaintiff cites belie its conclusion about how the rational-basis and motion-to-dismiss standards interact.  See Motion to Alter Judgment at 12 (citing Wroblewski and Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008)).  For example, the Union makes much of the Seventh Circuit's acknowledgement in Wroblewski that there is some tension between the rational-basis standard — which "requires the government to win if any set of facts reasonably may be conceived to justify [an act's] classification" of people — and the Rule 12(b)(6) standard — which "requires the plaintiff to prevail if 'relief could be granted under any set of facts that could be proved consistent with the allegations.'"  965 F.2d at 459 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)) (noting that confluence of standards presents a "perplexing situation"); see also Abigail All. for Better Access to Developmental

Drugs v. von Eschenbach, 495 F.3d 695, 712 n.20 (D.C. Cir. 2007) (citing Wroblewski and

recognizing possibility of "some tension"); see also Motion to Alter Judgment at 12.  As the

Seventh Circuit clarified, however, that all this means is that a court must "take as true all of the

complaint's allegations and reasonable inferences that follow" and "apply the resulting 'facts' in

light of the deferential rational basis standard."  Wroblewski, 965 F.2d at 460; accord Giarratano,

521 F.3d at 304; Rucci v. Cranberry Twp., Pa., 130 F. App'x 572, 575 (3d Cir. 2005); see also

Dixon, 666 F.3d at 1342.  That is how this Court approached the claim.

        In support of its equal-protection count, Plaintiff alleged that the Act "gives legal effect

to the [private] biases and anti-police rhetoric currently being expressed by citizens" and "serves

the illegitimate objective of punishing and discriminating against a class of people that are

presently disfavored politically."  Fraternal Ord. of Police, 2020 WL 6484312, at *3 (second

alteration in original) (first quoting Pl. MSJ. at 9–10, then quoting Compl., ¶ 23); see also id.

(alleging that Act "separated sworn law enforcement personnel into a new, distinct class" "for

the sole purpose of discriminating against a disfavored class") (quoting Compl., ¶ 22).  In

dismissing the count, the Court acknowledged that it was required to "treat the complaint's

factual allegations as true" and to "grant plaintiff the benefit of all inferences that can be derived

from the facts alleged."  Id. at *2 (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000)) (cleaned up).  Then, after spending a paragraph reciting Plaintiff's

allegations, the Court gave full weight to the pleaded facts and concluded that they did not

"negate [the District's] 'plausible reason[]' — namely, accountability — for enacting Section

116."  Id. at *3 (second alteration in original) (quoting FCC v. Beach Commc'n, Inc., 508 U.S.

307, 315 (1993)).  In other words, dismissal was proper because, after accepting the factual

allegations as true, there remained a "reasonably conceivable state of facts that could provide a

rational basis for the [Act's] classification."  Id. at *2 (quoting Cannon v. District of Columbia, 717 F.3d 200, 207 (D.C. Cir. 2013)); see also Hettinga, 677 F.3d at 478–79.  The Court relied on that same conclusion as an alternate basis for dismissing the due-process count.  Id. at *9–10 (finding dismissal warranted because "any deprivation of [the alleged] interests is not unconstitutionally arbitrary").  This is not clear error.

Perhaps recognizing that the Court's conclusion relied on a proper application of binding precedent, the Union also argues that the Court should disregard the D.C. Circuit's decision in Hettinga and the standard that case set forth for considering dismissal of an equal-protection claim.  See Motion to Alter Judgment at 12 n.3.  According to Plaintiff, the case is "wrongly decided" because it failed to consider Supreme Court cases from the 1930s.  Id. (discussing Borden's Farm Products Co. v. Baldwin, 293 U.S. 194 (1934), and Nashville, C. & St. L. Ry. v. Walters, 294 U.S. 405 (1935)).  The Court is skeptical of this characterization of Hettinga, but no matter: it has no power to ignore binding precedent.  E.g., United States v. Torres, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like panels of this court, are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule it.").

Independent of its legal-standard argument — which is primarily relevant to the equal-protection analysis — the Union contends that the Court also erred in its dismissal of the remaining counts because it did not accept the Complaint's factual allegations as true.  See Motion to Alter Judgment at 14–17.  Many of the Union's contentions, however, relate to the Court's disregard of the legal conclusions and unsupported assertions within the Complaint, not of pleaded facts.  Whereas a court must accept alleged facts as true, it need not accept "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint." Id. (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Here again, then, the Court finds no clear error.

On its bill-of-attainder count, the Union maintains that the Court did not accept as true its allegation that the Act was "offered as a punishment of sworn law enforcement officers." Motion to Alter Judgment at 14; see also Fraternal Ord. of Police, 2020 WL 6484312, at *4 (acknowledging that pleading).  Whether the Act imposes punishment, however, is a legal conclusion, for which the Circuit has set forth three factors courts must weigh.  Selective Serv. Sys. v. Minn. Pub. Interest Rsch. Group, 468 U.S. 841, 852 (1984) (historical test, functional test, and motivational test); see also Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec., 909 F.3d 446, 455 (D.C. Cir. 2018).  The Court considered the Union's pleading under each of the factors and found none indicative of punishment.  See Fraternal Ord. of Police, 2020 WL 6484312, at *5–7.  As to whether the Act was "offered" as punishment, see Motion to Alter Judgment at 14, this allegation was relevant to the functional and motivational tests.  On the former, the Court found that the Act's burden was not "so disproportionate that it belies any purported nonpunitive goals." Fraternal Ord. of Police, 2020 WL 6484312, at *6 (emphasis removed) (quoting Kaspersky Lab, Inc., 909 F.3d at 455).  As to the latter, the Court concluded that the Complaint did not point to any "unmistakable evidence of punitive intent," as required for the motivational factor by itself to be indicative of punishment.  Id. at *7 (quoting Foretich v. United States, 351 F.3d 1198, 1225 (D.C. Cir. 2003)).  The remaining facts that the Union contends that the Court brushed off — such as the lack of studies to support the Act — were not relevant to the analysis.  See Motion to Alter Judgment at 14; Fraternal Ord. of Police, 2020 WL 6484312, at *5–7.

Similarly, on the Contract Clause claim, Plaintiff protests that the Court neglected its allegation that the Act constitutes a "substantial and significant impairment" to its contractual rights. See Motion to Alter Judgment at 15 (cleaned up). That, too, is a legal conclusion — one the Court found unsupported. To determine whether "[a] state law has . . . operated as a substantial impairment of a contractual relationship," Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978), courts consider "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Gen. Motors Corp. v. Romein, 503 U.S. 181, 186 (1992); see also Fraternal Ord. of Police, 2020 WL 6484312, at *7 (explaining same). The Court concluded that it had no basis to find a Contract Clause violation of a "pre-existing contract['s] promises about future contracts." Fraternal Ord. of Police, 2020 WL 6484312, at *8. It found, moreover, that the Union had not pled facts to support the legal conclusion that "any impairment of the pre-existing CBA is substantial." Id.

Finally, on the due-process count, the Union posits that the Court's conclusion that Section 116 of the Act "does not affect the Union members' employment status" contradicts the Complaint's allegation that the Union "ha[d] enjoyed the right to bargain with management concerning the disciplinary process" for over 40 years. See Compl., ¶¶ 13, 43; Motion to Alter Judgment at 15. The Court doubts that those statements are in conflict, but even if Plaintiff is correct, the Court dismissed the claim because it found that the Union's interest — the right "to bargain for terms inextricably linked to [members'] employment . . . as well as their property right to employment" — was not "'so rooted in the traditions and conscience of our people as to be ranked as fundamental' for substantive-due-process purposes." Fraternal Ord. of Police, 2020 WL 6484312, at *9 (first quoting Pl. MSJ at 19, then quoting Reno v. Flores, 507 U.S. 292, 303

(1993)).  The Court only relied on the conclusion that Section 116 "does not affect Union members' employment status" as an alternative basis for dismissal.  Id.

As none of the Union's arguments meets the "stringent" standard Rule 59(e) imposes, its Motion cannot be granted for clear error.  See Mohammadi, 947 F. Supp. 2d at 84 ("mere disagreement does not support a Rule 59(e) motion") (citation omitted) (cleaned up).

2.  *Manifest Injustice*

Plaintiff alternatively asks the Court to grant its Rule 59(e) Motion to prevent manifest injustice.  See Motion to Alter Judgment at 17.  The entry of final judgment, it explains, "upsets the D.C. Police Union's expectations that it would be permitted to amend its Complaint under Rule 15(a)."  Id.  This is particularly so, Plaintiff argues, because leave to amend the Complaint should ordinarily be "freely granted."  See Motion to Alter Judgment at 17–18.

This argument lacks the wings to fly.  Plaintiff seeks to amend its Complaint to include positions available to it from the outset, but Rule 59(e) is "not a vehicle to present a new legal theory that was available prior to judgment."  Leidos, Inc., 881 F.3d at 217 (quoting Patton Boggs LLP, 683 F.3d at 403); accord Exxon Shipping Co., 554 U.S. at 485 n.5 ("Rule 59(e) . . . may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment.") (quoting 11 C. Wright & A Miller, Federal Practice & Procedure Civil § 2810.1 (2d ed. 1995)).  While the standard to amend is lenient, moreover, it is not incorporated within Rule 59(e)'s "stringent" requirements.  Ciralsky, 353 F.3d at 673 (quoting Firestone, 76 F.3d at 1208); see also Trudel, 924 F.3d at 1287–88 (rejecting plaintiff's invocation of Rule 15(a) standard as basis to vacate judgment under Rule 59(e)).  Plaintiff must first overcome Rule 59(e)'s requirements independently.  E.g., Firestone, 76 F.3d at 1208; Trudel, 924 F.3d at 1288. It has not.

C.  Motion for Leave to Amend

As previously noted, "Leave to amend a complaint after judgment may be granted only after the Court vacates that judgment."  Foster, 159 F. Supp. 3d at 16.  Because Plaintiff does not prevail in that effort, its Motion to Amend must be denied as moot.  E.g., Mohammadi, 782 F.3d at 18 ("Since the court declined to set aside the judgment under Rule 59(e), it properly concluded that [plaintiffs'] motion to amend under Rule 15(a) was moot.") (alteration in original) (quoting Ciralsky, 355 F.3d at 673); Dun, No. 19-40, 2020 WL 4001472, at *6.

Even had the Union managed to obtain vacatur, amendment would still not be warranted.  While permission for amendment "should [be] freely give[n] . . . when justice so requires,"  Fed. R. Civ. P. 15(a)(2), it need not be when amendment would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962) (noting "futility of amendment" as permissible basis for denial); see also Dun, No. 19-40, 2020 WL 4001472, at *6 (same).  In other words, if the new or amended causes of action would still be deficient notwithstanding the proposed amendment, courts need not grant leave.  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").  The Union's additional factual allegations would not change the legal deficiencies of its pleading.

On its equal-protection claim, Plaintiff now seeks to plead that "[t]he District lacks a rational basis for the Act's differential treatment of the D.C. Police Union from other District employees and other armed officers in unions in the District" — "[s]pecifically, officers in the Department of Corrections and the Protective Services Division."  ECF No. 18-2 (Am. Compl.),

¶ 31.  Although its first Complaint did not contain this specific allegation, Plaintiff raised the argument in briefing.  See ECF No. 11 (Pl. Reply) at 3.  The Court found that, even if those facts had been properly pled, the count still would not survive a motion to dismiss because MPD officers are not similarly situated to Department of Corrections and Protective Services Division officers.  Fraternal Ord. of Police, 2020 WL 6484312, at *4.  Its conclusion would thus hold true: "MPD officers' unique accountability, scope of powers, and jurisdiction thus support the position that there is a rational basis for the line that Section 116 draws between them and members of those other unions."  Id.

Plaintiff also wishes to include statements from numerous Councilmembers, which it contends show that the Act is "designed to punish the police."  ECF No. 23 (Am. Compl. Reply) at 4.  According to the Union, many of these statements indicate that the Act was passed without the benefit of studies or community input, as a "reactionary measure" following the "killings of George Floyd and Breonna Taylor," and in response to concerns of racism in the department.  See Am. Compl., ¶¶ 9–13, 38.  In its prior Opinion, the Court addressed similar pleadings and explained that "[u]nder rational-basis review . . . 'legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'"  Fraternal Ord. of Police, 2020 WL 6484312, at *3 (quoting Beach Commc'n, Inc., 508 U.S. at 315); see also id. at *6 (noting emergency declaration acknowledges "national movement around racism in policing"). This subset of statements thus would not move the needle.

The Union also points to newly added comments from Councilmember Trayon White, who said that there are "bad actors" in the department "who have been going on without the proper penance."  Am. Compl., ¶¶ 14, 36 (citation omitted) (emphasis removed); see also Am. Compl. Reply at 4–5.  He also stated that the "thought is . . . to have some kind of retribution or

some kind of justice in this criminal justice system."  Am. Compl., ¶ 14 (citation omitted) (emphasis removed).  The Court questions the relevancy of these statements to the issue before it, as the Union does not dispute that the Councilmember made them in reference to proposed amendments to other sections of the Act (which he later withdrew).  See ECF No. 21 (Am. Compl. Opp.) at 5; see also Am. Compl. Reply at 6–7.  In any event, in the context of considering reforms for "bad actors" in the public sector, these comments would not negate the District's "plausible reason" for Section 116: to "enhance the police accountability."  Fraternal Ord. of Police, 2020 WL 6484312, at *3.

Nor would these statements alter the result on the Union's bill-of-attainder claim.  See Am. Compl. Reply at 5–12 (contending otherwise).  Even considering them, the Act "reasonably can be said to further nonpunitive legislative purposes," and the burden is not "so disproportionate that it belies any purported nonpunitive goals," as considered under the functional test.  Fraternal Ord. of Police, 2020 WL 6484312, at *5–6 (first quoting Selective Serv. Sys., 468 U.S. at 852, then quoting Kaspersky Lab, Inc., 909 F.3d at 455) (cleaned up).  The comments are immaterial to the historical test.  Id. at *6; see also Selective Serv. Sys., 468 U.S. at 852 (considering "whether the challenged statute falls within the historical meaning of legislative punishment").  Finally, there is no plausible argument that the statements relevant to Section 116's enactment are "unmistakable evidence of punitive intent," as required for the motivational factor to be determinative on its own.  Foretich, 351 F.3d at 1225 (citation omitted); see also Fraternal Ord. of Police, 2020 WL 6484312, at *7.  Again, then, the amendments would be futile.

Quick work can be made of the Contract Clause claim.  As mentioned above, the determination of whether a state law has "operated as a substantial impairment of a contractual

relationship," Allied Structural Steel Co., 438 U.S. at 244, turns on "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Gen. Motors Corp., 503 U.S. at 186. While the Amended Complaint includes facts to better support this count, the Act — which is prospective, applying to CBAs entered into after the one at issue expired on September 30, 2020, see Act at 12; CBA at 1 — could impair only the portion of the CBA that mandates that Article 12's disciplinary measures "shall be incorporated into any successor [CBA]." CBA at 14; see also Fraternal Ord. of Police, 2020 WL 6484312, at *8. Even given the additional facts, the Court would again decline to conclude that "the Contract Clause constitutionalizes pre-existing contracts' promises about future contracts." Fraternal Ord. of Police, 2020 WL 6484312, at *8.

Next, on the substantive-due-process count, Plaintiff's Amended Complaint pleads the same interest that the Court concluded substantive due process does not protect — namely, members' "right to bargain and enter into a contract . . . for terms directly related to discipline stemming from their employment." Compl., ¶ 42; see also id., ¶ 44; Am. Compl., ¶ 62; Fraternal Ord. of Police, 2020 WL 6484312, at *9. As the Court explained in the Opinion, substantive due process shields only a narrow class of interests: those "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325 (1937), and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." Reno, 507 U.S. at 303 (quoting United States v. Salerno, 481 U.S. 739, 751 (1987)); see also Fraternal Ord. of Police, 2020 WL 6484312, at *9. The Court has already concluded that this interest is neither. Fraternal Ord. of Police, 2020 WL 6484312, at *9.

Finally, the Union's Amended Complaint lists only four counts but — like its first Complaint — can be liberally read to state a violation of the District's Home Rule Act. See Am.

Compl., ¶¶ 33, 47, 57, 64; Compl., ¶¶ 20, 28, 33, 41; <u>Fraternal Ord. of Police</u>, 2020 WL

6484312, at *10 (construing Complaint in same manner).  Once again, without an anchoring

constitutional claim, the Union's Home Rule Act count would be futile.  <u>See</u> Am. Compl. Reply

at 16 (agreeing that Union's Home Rule Act claim "rises and falls with its constitutional claims")

(cleaned up).

## IV.    Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion to Alter or Amend the

Judgment and its Motion to Amend the Complaint.  A separate Order so stating will issue this

day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>May 14, 2021</u>