APPEAL,CLOSED,JURY,TYPE–E

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:20–cv–02130–JEB</u>
## *Internal Use Only*

| | |
|---|---|
| FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION v. DISTRICT OF COLUMBIA et al<br>Assigned to: Judge James E. Boasberg<br>Cause: 42:1983 Civil Rights Act | Date Filed: 08/05/2020<br>Date Terminated: 11/04/2020<br>Jury Demand: Plaintiff<br>Nature of Suit: 950 Constitutional – State Statute<br>Jurisdiction: Federal Question |

**<u>Plaintiff</u>**

**FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION**

represented by **Daniel J. McCartin**
CONTI INTERNATIONAL, LLC
2045 Lincoln Highway
Edison, NJ 08817
(410) 837–6999
Email: dan@contifenn.com
*ATTORNEY TO BE NOTICED*

**Anthony Michael Conti**
CONTI FENN LLC
36 South Charles Street
Suite 2501
Baltimore, MD 21201–3316
410–837–6999
Email: tony@contifenn.com
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**DISTRICT OF COLUMBIA**

represented by **Pamela A. Disney**
OFFICE OF THE ATTORNEY
GENERAL FOR THE DISTRICT OF
COLUMBIA
400 Sixth Street NW
Suite 10100
Washington, DC 20001
(202) 807–0371
Email: pamela.disney@dc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gavin Noyes Palmer**
OFFICE OF THE ATTORNEY
GENERAL FOR THE DISTRICT OF

COLUMBIA
400 6th Street NW
Washington, DC 20001
202–805–7440
Email: gavin.palmer@dc.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**MURIEL BOWSER**                          represented by   **Pamela A. Disney**
*in her official capacity as Mayor of the*                    (See above for address)
*District of Columbia*                                        *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Gavin Noyes Palmer**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/05/2020 | 1 | | COMPLAINT against All Defendants with Jury Demand ( Filing fee $ 400 receipt number ADCDC–7425036) filed by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons)(Conti, Anthony) (Entered: 08/05/2020) |
| 08/05/2020 | | | Case Assigned to Judge James E. Boasberg. (adh, ) (Entered: 08/05/2020) |
| 08/05/2020 | 2 | | SUMMONS (2) Issued Electronically as to MURIEL BOWSER, District of Columbia Attorney General, (Attachment: # 1 Notice and Consent)(adh, ) (Entered: 08/05/2020) |
| 08/14/2020 | 3 | | MOTION for Summary Judgment by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order, # 4 Exhibit Exhibit 1, # 5 Exhibit Exhibit 2)(McCartin, Daniel) (Entered: 08/14/2020) |
| 08/18/2020 | 4 | | NOTICE of Appearance by Pamela A. Disney on behalf of All Defendants (Disney, Pamela) (Entered: 08/18/2020) |
| 08/18/2020 | 5 | | NOTICE of Appearance by Gavin Noyes Palmer on behalf of MURIEL BOWSER, DISTRICT OF COLUMBIA (Palmer, Gavin) (Entered: 08/18/2020) |
| 08/20/2020 | 6 | | MOTION for Extension of Time to File Response/Reply *to Plaintiff's Complaint and Motion for Summary Judgment* by MURIEL BOWSER, DISTRICT OF COLUMBIA (Attachments: # 1 Text of Proposed Order)(Disney, Pamela) (Entered: 08/20/2020) |
| 08/20/2020 | 7 | | Memorandum in opposition to re 6 MOTION for Extension of Time to File Response/Reply *to Plaintiff's Complaint and Motion for Summary Judgment* filed by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Exhibit 1)(McCartin, Daniel) (Entered: |

| | | | |
|---|---|---|---|
| | | | 08/20/2020) |
| 08/20/2020 | | | MINUTE ORDER GRANTING IN PART and DENYING IN PART 6 Motion for Extension of Time. The Court ORDERS that: 1) Defendants shall file their Answer or otherwise respond to Plaintiff's Complaint by September 4, 2020; and 2) Defendants shall file their response to Plaintiff's motion for summary judgment by September 4, 2020. So ORDERED by Judge James E. Boasberg on 08/20/2020. (lcjeb3) (Entered: 08/20/2020) |
| 08/20/2020 | | | Set/Reset Deadlines: Answer due by 9/4/2020. Response to Motion for Summary Judgment due by 9/4/2020. (znbn) (Entered: 08/21/2020) |
| 09/04/2020 | 8 | | Memorandum in opposition to re 3 MOTION for Summary Judgment filed by MURIEL BOWSER, DISTRICT OF COLUMBIA. (Attachments: # 1 Statement of Facts Response to Plaintiff's Statement of Facts, # 2 Statement of Facts, # 3 Text of Proposed Order)(Disney, Pamela) (Entered: 09/04/2020) |
| 09/04/2020 | 9 | | Cross MOTION to Dismiss *Plaintiff's Complaint* by MURIEL BOWSER, DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order)(Disney, Pamela) (Entered: 09/04/2020) |
| 09/11/2020 | 10 | | Memorandum in opposition to re 9 Cross MOTION to Dismiss *Plaintiff's Complaint* filed by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. (Attachments: # 1 Statement of Facts, # 2 Text of Proposed Order, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(McCartin, Daniel) (Attachment 6 replaced on 9/14/2020) (ztnr). (Entered: 09/11/2020) |
| 09/11/2020 | 11 | | REPLY to opposition to motion re 9 Cross MOTION to Dismiss *Plaintiff's Complaint* filed by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(McCartin, Daniel) (Attachment 4 replaced on 9/14/2020) (ztnr). (Entered: 09/11/2020) |
| 09/14/2020 | 12 | | MOTION for Extension of Time to *Reply to Plaintiff's Opposition to Defendants' Cross−Motion to Dismiss Plaintiff's Complaint* by MURIEL BOWSER, DISTRICT OF COLUMBIA (Attachments: # 1 Text of Proposed Order)(Disney, Pamela) (Entered: 09/14/2020) |
| 09/14/2020 | 13 | | Memorandum in opposition to re 12 MOTION for Extension of Time to *Reply to Plaintiff's Opposition to Defendants' Cross−Motion to Dismiss Plaintiff's Complaint* filed by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. (Attachments: # 1 Text of Proposed Order)(McCartin, Daniel) (Entered: 09/14/2020) |
| 09/14/2020 | | | MINUTE ORDER GRANTING Defendants' 12 Motion for Extension of Time. The Court ORDERS that Defendants shall file their reply by September 25, 2020. So ORDERED by Judge James E. Boasberg on 09/14/2020. (lcjeb2) (Entered: 09/14/2020) |
| 09/14/2020 | | | Set/Reset Deadlines: Reply due by 9/25/2020. (znbn) (Entered: 09/14/2020) |
| 09/15/2020 | | | |

| | | |
|---|---|---|
| | | NOTICE OF ERROR re 13 Memorandum in Opposition; emailed to dan@lawcfl.com, cc'd 7 associated attorneys –– The PDF file you docketed contained errors: 1. Invalid attorney signature, 2. FYI; DO NOT REFILE. Future filings attorney signature must match login/password. (zeg, ) (Entered: 09/15/2020) |
| 09/25/2020 | 14 | REPLY to opposition to motion re 9 Cross MOTION to Dismiss *Plaintiff's Complaint* filed by MURIEL BOWSER, DISTRICT OF COLUMBIA. (Disney, Pamela) (Entered: 09/25/2020) |
| 11/04/2020 | 15 | ORDER: The Court ORDERS that: (1) Defendants' 9 Motion to Dismiss is GRANTED; (2) Plaintiff's 3 Motion for Summary Judgment is DENIED; and (3) The case is DISMISSED WITHOUT PREJUDICE. Signed by Judge James E. Boasberg on 11/04/2020. (lcjeb3) (Entered: 11/04/2020) |
| 11/04/2020 | 16 | MEMORANDUM OPINION re 15 Order. Signed by Judge James E. Boasberg on 11/04/2020. (lcjeb3) (Entered: 11/04/2020) |
| 12/01/2020 | 17 | MOTION to Alter Judgment by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Text of Proposed Order)(McCartin, Daniel). Added MOTION to Clarify on 12/2/2020 (ztth). (Entered: 12/01/2020) |
| 12/01/2020 | 18 | MOTION to Amend/Correct *Complaint* by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Text of Proposed Order)(McCartin, Daniel) (Entered: 12/01/2020) |
| 12/07/2020 | 19 | Consent MOTION for Extension of Time to File Response/Reply as to 18 MOTION to Amend/Correct *Complaint*, 17 MOTION to Alter Judgment MOTION to Clarify by MURIEL BOWSER, DISTRICT OF COLUMBIA (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Disney, Pamela) (Entered: 12/07/2020) |
| 12/07/2020 | | MINUTE ORDER GRANTING Consent 19 Motion for Extension of Time. The Court ORDERS that: (1) Defendants shall respond to Plaintiff's Rule 60 motion to clarify or correct order and judgment dismissing the action or, in the alternative, Rule 59(e) motion to alter or amend judgment and Plaintiff's motion for leave to file an amended complaint by December 22, 2020; and (2) Plaintiff shall reply to Defendants' responses by January 19, 2021. So ORDERED by Judge James E. Boasberg on 12/07/2020. (lcjeb2) (Entered: 12/07/2020) |
| 12/22/2020 | 20 | Memorandum in opposition to re 17 MOTION to Alter Judgment MOTION to Clarify filed by MURIEL BOWSER, DISTRICT OF COLUMBIA. (Attachments: # 1 Text of Proposed Order, # 2 Text of Proposed Order)(Palmer, Gavin) (Entered: 12/22/2020) |
| 12/22/2020 | 21 | Memorandum in opposition to re 18 MOTION to Amend/Correct *Complaint* filed by MURIEL BOWSER, DISTRICT OF COLUMBIA. (Attachments: # 1 Text of Proposed Order)(Disney, Pamela) (Entered: 12/22/2020) |
| 01/18/2021 | 22 | REPLY to opposition to motion re 17 MOTION to Alter Judgment MOTION to Clarify filed by FRATERNAL ORDER OF POLICE, METROPOLITAN |

| | | | |
|---|---|---|---|
| | | | POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. (McCartin, Daniel) (Entered: 01/18/2021) |
| 01/19/2021 | 23 | | REPLY to opposition to motion re 18 MOTION to Amend/Correct *Complaint* filed by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. (McCartin, Daniel) (Entered: 01/19/2021) |
| 05/14/2021 | 24 | | ORDER: The Court ORDERS that: (1) Plaintiff's 17 Motion to Alter or Amend the Judgment is DENIED; and (2) Plaintiff's 18 Motion to Amend the Complaint is DENIED. Signed by Judge James E. Boasberg on 5/14/2021. (lcjeb3) (Entered: 05/14/2021) |
| 05/14/2021 | 25 | | MEMORANDUM OPINION re 24 Order. Signed by Judge James E. Boasberg on 5/14/2021. (lcjeb3) (Entered: 05/14/2021) |
| 05/27/2021 | 26 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 16 Memorandum & Opinion, 25 Order, 15 Order on Motion to Dismiss, 24 Order on Motion to Alter Judgment, Order on Motion to Amend/Correct, Order on Motion to Clarify by FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, D.C. POLICE UNION. Filing fee $ 505, receipt number ADCDC–8487551. Fee Status: Fee Paid. Parties have been notified. (McCartin, Daniel) (Entered: 05/27/2021) |
| 06/01/2021 | 27 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 26 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 06/01/2021) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRATERNAL ORDER OF POLICE,
METROPOLITAN POLICE
DEPARTMENT LABOR COMMITTEE,
D.C. POLICE UNION,

     **Plaintiff,**

        **v.**                                            **Civil Action No. 20-2130 (JEB)**

DISTRICT OF COLUMBIA, *et al.*,

     **Defendants.**

<u>**ORDER**</u>

     For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that:

    1.  Defendants' Motion to Dismiss is GRANTED;

    2.  Plaintiff's Motion for Summary Judgment is DENIED; and

    3.  The case is DISMISSED WITHOUT PREJUDICE.

                       /s/ *James E. Boasberg*
                       JAMES E. BOASBERG
                       United States District Judge

Date: <u>November 4, 2020</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRATERNAL ORDER OF POLICE,
METROPOLITAN POLICE
DEPARTMENT LABOR COMMITTEE,
D.C. POLICE UNION,

      Plaintiff,

          v.                    Civil Action No. 20-2130 (JEB)

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

## <u>MEMORANDUM OPINION</u>

The death of George Floyd in Minneapolis this past summer galvanized nationwide protests regarding police misconduct.  It also precipitated debate in different cities about police accountability and potential avenues of reform.  As part of this wave, the District of Columbia in July enacted the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020.  Section 116 of the Act reserves to the city all matters pertaining to the discipline of sworn law-enforcement personnel, thereby excluding such matters from negotiation in future collective-bargaining agreements.  The Union that represents Metropolitan Police Department officers then filed this suit against the District of Columbia and Mayor Muriel Bowser, alleging that Section 116 violates the Equal Protection, Bill of Attainder, Contract, and Due Process Clauses of the Constitution as well as D.C.'s Home Rule Act.  The Union now asks this Court for summary judgment on all claims, while the District cross-moves for dismissal or, in the alternative, for summary judgment.  Believing that the city has the better position here, the Court will dismiss the case.

I.     **Background**

The Council of the District of Columbia passed the Comprehensive Policing and Justice

Reform Second Emergency Amendment Act of 2020 on an emergency basis, see ECF No. 3-4

(Act), in response to this summer's protests of "injustice, racism, and police brutality against

Black people and other people of color."  ECF No. 1 (Compl.), ¶ 8 (quoting Act at 2); see also

ECF No. 9-1 (Def. MTD) at 34.  Mayor Bowser signed the Act into law on July 22, 2020.  See

Compl., ¶ 7; Act at 1.  Among the Act's wide-ranging reforms — from the prohibition on the use

of neck restraints by law enforcement to the establishment of a Police Reform Commission, see

Act at 2–3, 16–17 — is Section 116, which amends the "Management rights; matters subject to

collective bargaining" section of the District's Comprehensive Merit Personnel Act, see D.C.

Code § 1-617.08, by adding the following:

> (c)(1) All matters pertaining to the discipline of sworn law
> enforcement personnel shall be retained by management and not be
> negotiable.
> (2) This subsection shall apply to any collective bargaining
> agreements entered into with the Fraternal Order of
> Police/Metropolitan Police Department Labor Committee after
> September 30, 2020.

Act at 12.

Prior to the enactment of Section 116, and since the passage of the CMPA in 1979, the

Union had negotiated with the city collective-bargaining agreements governing, *inter alia*, the

disciplinary procedures that apply to members of the Union.  See Compl., ¶¶ 11, 14.  Under the

most recent CBA, effective through September 30, 2020, and automatically renewed for one-

year periods thereafter, Article 12 covers issues of Discipline.  See ECF No. 3-5 (CBA) at 1, 13,

41.

2

Plaintiff Fraternal Order of Police, Metropolitan Police Department Labor Committee, D.C. Police Union filed its Complaint on August 5, 2020, alleging that Section 116 deprives its members of their rights under the Equal Protection, Bill of Attainder, Contract, and Due Process Clauses of the Constitution and violates D.C.'s Home Rule Act.  See Compl. at 1; D.C. Code § 1-203.02.  Bringing its constitutional claims via 42 U.S.C. § 1983, the Union seeks declaratory and injunctive relief "[p]ermanently enjoining the approval, enactment and enforcement of Section 116 of the Act," id. at 9–12, 14–16, and has moved for summary judgment on all claims. See ECF No. 3-1 (Pl. MSJ).  Opposing that Motion, the District filed a Cross-Motion to Dismiss or for Summary Judgment.  The parties' Motions are now ripe for resolution.

## II.    Legal Standard

Because the Court dismisses all claims, it need only set forth that standard.  Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  A court need not accept as true, then, "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor

3

"inferences . . . unsupported by the facts set out in the complaint." Id. (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  For a plaintiff to survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.  The Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  Among other matters of public record, the Court here takes notice of the CBA and the Act, even though they are attached to Plaintiff's Motion rather than to its Complaint, as neither party questions their authenticity or admissibility.

### III.   Analysis

The Union alleges that Section 116's violations of the Constitution are actionable via 42 U.S.C. § 1983, which provides a remedy for the deprivation of such rights. DuBerry v. District of Columbia, 824 F.3d 1046, 1051 (D.C. Cir. 2016).  It further contends that those same deprivations violate D.C.'s Home Rule Act.  The Court thus considers each constitutional claim in turn and concludes with the Home Rule Act challenge.

### A.  Equal Protection

According to the Union, the Act violates the Equal Protection Clause of the Fifth and Fourteenth Amendments because it discriminatorily restricts the bargaining rights of sworn law-enforcement officers, but no other District employee or labor union, and lacks any rational connection to a legitimate government objective. See Compl., ¶¶ 17–24.  The District, of course, contends otherwise. See Def. MTD at 11.

4

As set out in the Fourteenth Amendment, the equal-protection clause provides that "no state shall deny to any person within its jurisdiction equal protection of the laws," and it applies to the District via the Fifth Amendment.  Women Prisoners of D.C. Dep't of Corr. v. D.C., 93 F.3d 910, 924 (D.C. Cir. 1996); see also Jo v. District of Columbia, 582 F. Supp. 2d 51, 60 (D.D.C. 2008) (42 U.S.C. § 1983 allows equal-protection claims against District).  "To prevail on an equal-protection claim, the plaintiff must show that the government has treated it differently from a similarly situated party and that the government's explanation for the differing treatment 'does not satisfy the relevant level of scrutiny.'"  Muwekma Ohlone Tribe v. Salazar, 708 F.3d 209, 215 (D.C. Cir. 2013) (quoting Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1102 (D.C. Cir. 2005)).  Here, the parties agree that rational-basis review applies.  See Compl., ¶ 23; Def. MTD at 14–20.  Under that "highly deferential" standard, Dixon v. District of Columbia, 666 F.3d 1337, 1342 (D.C. Cir. 2011), courts afford legislative actions a "strong presumption of validity."  Hedgepeth v. Wash. Metro. Area Transit Auth., 386 F.3d 1148, 1153, 1156 (D.C. Cir. 2004).   The Act thus "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Cannon v. District of Columbia, 717 F.3d 200, 207 (D.C. Cir. 2013) (quoting Hettinga v. United States, 677 F.3d 471, 478–79 (D.C. Cir. 2012)).  The Union "bear[s] the burden of showing that the [Act] [was] 'not a rational means of advancing a legitimate government purpose.'"  Id. (quoting Hettinga, 677 F.3d at 478–79).

The District explains that the Act aims to address "police misconduct" and to "enhance the police accountability and transparency through the implementation of numerous reforms and best practices," including Section 116.  See Def. MTD at 16–17 (citing Comprehensive Policing and Justice Reform Second Emergency Declaration Resolution of 2020, PR 23–0872, § 2(b)

(D.C. July 7, 2020)); see also Comprehensive Policing and Justice Reform Emergency

Declaration Resolution of 2020, PR 23-0826, § 2(j) (D.C. June 6, 2020).  Ensuring accountability

of public employees — and particularly of police officers given their wide-ranging powers — is

certainly a legitimate goal, and the Union does not contend otherwise.

Instead, the Union alleges that, "for the sole purpose of discriminating against a

disfavored class," the Act "distinguished and separated sworn law enforcement personnel into a

new, distinct class, separating them from every other District government employee."  Compl.,

¶ 22.  The Act lacks a rational basis, according to the Union, because it "serves the illegitimate

objective of punishing and discriminating against a class of people that are presently disfavored

politically," id. ¶ 23, and "does nothing more than give legal effect to the [private] biases and

anti-police rhetoric currently being expressed by citizens."  Pl. MSJ at 9–10 (citing City of

Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 449 (1985)).  The lack of "findings, data,

studies or research" to support Section 116, the Act's passage on an emergency basis in response

to protests, and the Council's references to police misconduct in other jurisdictions (both in the

Act and its meetings) show, the Union maintains, the lack of a legitimate interest.  Id. at 9–10;

ECF No. 11 (Pl. Reply) at 6–8.

Under rational-basis review, however, "legislative choice is not subject to courtroom

fact-finding and may be based on rational speculation unsupported by evidence or empirical

data," FCC v. Beach Commc'n., Inc., 508 U.S. 307, 315 (1993), and classifications can be, "to

some extent[,] both underinclusive and overinclusive" as "perfect[ion] is by no means required."

Vance v. Bradley, 440 U.S. 93, 108 (1979) (citation omitted); see also Beach Commc'n, Inc.,

508 U.S. at 316.  The Union's contentions thus do not negate that "plausible reason[]" —

namely, accountability — for enacting Section 116.  Beach Commc'n, Inc., 508 U.S. at 313–14

(quoting <u>U.S. R.R. Ret. Bd. v. Fritz</u>, 449 U.S. 166, 179 (1980)); <u>id.</u> at 315 ("[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it.") (internal quotation marks and citation omitted); <u>Hedgepeth</u>, 386 F.3d at 1156.  This case is thus unlike <u>City of Cleburne</u>, on which the Union relies to argue that Section 116 merely codifies private biases, as there, "the record [did] not reveal <u>any</u> rational basis" for the government's action.  <u>See</u> 473 U.S. at 448 (emphasis added).  To the extent that the Union asks this Court to find that the Council embraced protesters' anti-police rhetoric, the legislative history that the Union cites provides no basis for the Court to do so.  <u>See</u> Pl. Reply at 6–7.

The Union raises a new argument in its Reply, but even were the Court to consider this late-breaking contention, it would not be viable.  Plaintiff there maintains that the District lacks a rational basis for the Act's differential treatment of the Union from "other public employees and unions that engage in the same police-related activity" — namely, the Fraternal Order of Police unions that represent the public employees of the District's Department of Corrections, Housing Authority, Department of General Services' Protective Services Division, and Department of Youth Rehabilitation Services.  <u>Id.</u> at 3.  According to the Union, there is no rational basis to treat the members of these four correctional- and law-enforcement-officer unions differently, as they are "equally responsible for public safety and given extraordinary powers to do their job," <u>id.</u> at 4, and can, like MPD officers, "make arrests, . . . carry non-lethal and lethal weapons, and . . . use physical force on the District's citizens."  <u>Id.</u> at 3.

As the District explains, however, the members of those other unions "do not have the same accountability to the general public, or the same broad jurisdiction, as MPD officers do." ECF No. 14 (Def. Reply) at 4.  For example, the Department of Corrections is responsible only

7

for the "safekeeping, care, protection, instruction, and discipline of all persons" detained at specific District facilities, see D.C. Code § 24-211.02(a), and the Protective Services Division's special police provide security in a limited area, at District-owned and leased properties.  See Dep't of Gen. Servs., DGS Protective Services Division, https://bit.ly/3oT5htV (last visited Nov. 2, 2020).  MPD officers' unique accountability, scope of powers, and jurisdiction thus support the position that there is a rational basis for the line that Section 116 draws between them and members of those other unions.

The only remaining question, then, is whether Section 116's means — *viz.*, making all matters pertaining to the discipline of sworn law-enforcement personnel non-negotiable in future collective-bargaining agreements — is rationally connected to accountability.  The District explains that, "[b]y ensuring that management's right to discipline sworn officers is unencumbered by the CBA negotiations, the District can improve police accountability."  Def. MTD at 17; see also id. at 8 ("Collective bargaining agreements are an essential tool for workers to negotiate and receive fair compensation, benefits, and workplace accommodations, but they should not be used to shield employees from accountability, particularly those employees who have as much power as police officers.") (emphasis removed) (quoting Mendelson Amendment to Comprehensive Policing and Justice Reform Emergency Amendment Act of 2020, B. 23–774, at 2, https://bit.ly/3jQXd9r (last visited Nov. 2, 2020)).  Further explanation is not required.  See Hedgepeth, 386 F.3d at 1156 (upholding government action "if there is any reasonably conceivable state of facts that could provide a rational basis") (citation omitted).

The Union again disputes this conclusion.  See Pl. MSJ at 11–13.  Beyond recycling its arguments for why the District lacks a legitimate interest, see Pl. Reply at 6–8 (taking issue with lack of studies and Council's discussion of out-of-District police misconduct and deaths), the

Union primarily posits that the current disciplinary procedures are more effective than Section 116 will be at ensuring accountability.  Id. at 8.  The Union argues, for example, that the present disciplinary procedures better comport with due process and decrease the likelihood that an officer's discipline will be "overturned based on an error or a due process violation."  Id. Rational-basis review does not, however, allow this Court to "second-guess [the District's] legislative judgments."  Hedgepeth, 386 F.3d at 1157.  Even if the judiciary were authorized to scrutinize "the wisdom of [the District's] policy choice," id., the Court does not have the factual basis here to do so.  In other words, since the city has not yet promulgated new disciplinary procedures pursuant to Section 116 and neither party has explained how discipline will be addressed going forward, the Court has no way of making an informed comparison.

It will thus dismiss the equal-protection claim.

B.  Bill of Attainder

The Union next alleges that the Act violates Article I, section 9, clause 3 of the Constitution, which states, "No Bill of Attainder . . . shall be passed."  This rarely litigated provision "prohibits Congress from enacting 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'"  Foretich v. United States, 351 F.3d 1198, 1216 (D.C. Cir. 2003) (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468 (1977)).  The Court assumes, as the parties do, that the clause applies to the District of Columbia.  A law violates the clause "if it (1) applies with specificity, and (2) imposes punishment."  Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec., 909 F.3d 446, 454 (D.C. Cir. 2018) (quoting Foretich, 351 F.3d at 1217).  The Union asserts that the Act does so "because it specifically targets one group — sworn law enforcement — and it imposes punishment on that group," Pl. MSJ at 13, by "depriv[ing] [it] of a right previously

9

enjoyed, namely the right to collectively bargain with management over discipline." Id. at 15; see also Compl., ¶ 27, 29.  Because the District argues only that the Union's claim fails at the second element, see Def. MTD at 21–22, the Court narrows its attention to whether the Act imposes punishment and concludes that it does not.

Although the traditional conception of this constitutional provision suggests that it applies only to criminal matters, courts have not interpreted the clause so narrowly.  Kaspersky Lab, Inc., 909 F.3d at 454.  Instead, through the second element of the test, the Constitution concerns itself with punishment more broadly defined.  Id.  At that second element, the sole inquiry is whether the legislation is impermissibly punitive or permissibly burdensome, and courts weigh three factors to make that determination:  "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'"  Selective Serv. Sys. v. Minn. Pub. Interest Rsch. Group, 468 U.S. 841, 852 (1984) (quoting Nixon, 433 U.S. at 473, 475–76, 478); see also Kaspersky Lab, Inc., 909 F.3d at 455. Each factor is an "independent — though not necessarily decisive — indicator of punitiveness." Foretich, 351 F.3d at 1218.

The Union contends that "[t]hrough the Act, the D.C. Council has effectively declared that sworn law enforcement officers in the District are guilty of racism and police brutality, and has stripped away their collective bargaining rights over discipline as punishment."  Pl. MSJ at 13–14.  While rhetorically stirring, neither that language nor the rest of the Union's Motion explains how the Bill of Attainder tests apply to its claim.  Even if this Court considers the new arguments that Plaintiff raises for the first time in its Reply, see Pl. Reply at 9–14,  dismissal

remains appropriate.  Because the Union focuses on the second factor and because "compelling proof on this [factor] may be determinative," Foretich, 351 F.3d at 1218, the Court begins its analysis there before turning to the historical and motivational inquiries.

1. *The Functional Test*

The second factor — "the so-called 'functional test' — invariably appears to be the most important of the three," id. (quoting BellSouth Corp. v. FCC, 162 F.3d 678, 683 (D.C. Cir. 1998) (BellSouth II)) (cleaned up), and asks the Court to consider "whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes."  Id. (quoting Nixon, 433 U.S. at 475–76).  The Court's task is to "identify the purpose, ascertain the burden, and assess the balance between the two." Kaspersky Lab, Inc., 909 F.3d at 455.

Much like equal-protection analysis, the inquiry begins with the Act's purpose.  Notably, however, the bill-of-attainder standard is somewhat "more exacting" than equal protection's rational-basis scrutiny "because it demands purposes that are not merely reasonable but [also] nonpunitive."  BellSouth Corp. v. FCC, 144 F.3d 58, 67 (D.C. Cir. 1998) (BellSouth I) ("Punitive purposes, however rational, don't count.").  The non-punitive purpose, according to the District, is "enhanc[ing] police accountability."  Comprehensive Policing and Justice Reform Emergency Declaration Resolution of 2020, PR 23-0826, § 2(j) (D.C. June 6, 2020); see also Second Emergency Declaration Resolution, PR 23-0872, § 2(b) (incorporating intent of first resolution); Def. MTD at 34 n.5.  In response, beyond reviving arguments that this Court has already addressed about the lack of hearings and evidence, the Act's purpose being "rooted in the demands of protestors," and the Act's exclusion of similarly situated unions, see Pl. MSJ at 15–16; Pl. Reply at 10–12; *supra* at 6–7, Plaintiff raises two others.  First, it contends that the

11

"Council's intent is to deprive the D.C. Police Union of due process so that police officers can be fired summarily and without any procedural safeguards."  Pl. MSJ at 16.  But Plaintiff cites nothing to support this claim, and the procedural protections that the District cites and that remain in the D.C. Code indicate otherwise.  See, e.g., D.C. Code § 5-1031(a-1)(1) (90-day time limit on commencement of discipline for MPD officers); id. § 1-616.54(c)–(d)(4) (requiring "written notice" that informs employee of "right to respond, orally or in writing, or both" when placed on administrative leave); id. § 1-616.51 (requiring issuance of rules to guarantee "[p]rior written notice of grounds" for discipline and "opportunity to be heard").

Separately, the Union attempts to reframe the Act's purpose as solely addressing "use of force" incidents.  See Pl. Reply at 10–12.  It maintains that Section 116 is both underinclusive (in that it addresses disciplinary procedures in the CBA but no other disciplinary procedures required of MPD) and overinclusive (in that it eliminates all disciplinary protections in the CBA when a more tailored approach could address use-of-force incidents alone).  Id.  The Court sees no basis to conclude that use-of-force incidents were the sole concern of Section 116.  The Act does reference such incidents outside the District, see Act at 2 ("On May 25, 2020, Minneapolis Police Department officer Derek Chauvin murdered George Floyd by applying a neck restraint to Floyd with his knee for 8 minutes and 46 seconds."), but it does so in the subsection that declares neck restraints to be "lethal and excessive force."  Id.  While the emergency declaration does acknowledge the "national movement around racism in policing [and the] use of force," moreover, it also discusses more generally the "lack of police accountability and transparency" and the "troubling relationship" many District residents have with law enforcement.  See Def. MTD at 7 (citing Emergency Declaration Resolution, PR23–0826, § 2(j)).  The Union's cherry-

picked quotes thus do not support narrowing the purpose of the Act to addressing use-of-force incidents alone.

Next, the functional-test inquiry examines the burden of the Act, which is balanced against the purpose. The Circuit has declared that "the question is not whether a burden is proportionate to the objective, but rather whether the burden is so disproportionate that it 'belies any purported nonpunitive goals.'" Kaspersky Lab, Inc., 909 F.3d at 455 (emphasis added) (quoting Foretich, 351 F.3d at 1222). The Union never states the weight of the burden that Section 116 imposes, but given its contentions that the "burden . . . is grossly disproportionate to [the Act's] purported nonpunitive purpose," Pl. Reply at 12, the Court assumes that the Union believes the burden to be great. The Court cannot agree, however, as the Act prohibits only the Union's negotiation of procedures related to disciplinary decisions in future CBAs, which are agreements that may never even come to fruition. See Def. Reply at 11–12; see Pl. Reply at 17 (acknowledging that future CBAs are not guaranteed). Even if the burden is somewhat significant, the Court sees no basis to conclude that it is "so disproportionate" to the District's stated goal of enhancing police accountability that the Act itself is punishment. Kaspersky Lab, Inc., 909 F.3d at 455.

### 2. *The Historical Test*

The Court must next consider "whether the challenged statute falls within the historical meaning of legislative punishment." Selective Serv. Sys., 468 U.S. at 852. As the Circuit has acknowledged, this inquiry is somewhat redundant to the functional test. Kaspersky Lab, Inc., 909 F.3d at 460. The Court thus "double-check[s] [its] functional-test work by comparing" the Union's deprivation with the "ready checklist of deprivations and disabilities so disproportionately severe and so inappropriate to nonpunitive ends that they unquestionably have

13

been held to fall within the proscription of [the Bill of Attainder Clause].'" <u>Id.</u> (citing <u>Nixon</u>, 433 U.S. at 473).  "This checklist includes sentences of death, bills of pains and penalties, and legislative bars to participation in specified employments or professions."  <u>Foretich</u>, 351 F.3d at 1218.

The Union acknowledges that its claimed deprivation is not on that list.  <u>See</u> Pl. Reply at 12–13.  Rather, it argues that the Bill of Attainder Clause is concerned with "prevent[ing] [the government] from circumventing the clause by cooking up newfangled ways to punish disfavored individuals or groups."  <u>Id.</u> at 12–13 (quoting <u>Kaspersky</u>, 909 F.3d at 454).  To the extent that those "newfangled" manners of punishment are the concern of the historical inquiry, rather than the functional or motivational tests, the Union's argument is not persuasive.  Relying on <u>United States v. Brown</u>, 381 U.S. 437 (1965), in which the Supreme Court invalidated legislation that prohibited any Communist Party member from serving as an officer of any labor union, the Union argues that the Bill of Attainder Clause concerns itself with "laws that infringe upon a person's employment."  Pl. Reply at 13.  But Section 116 does not prohibit any Union member from employment; it addresses only the management of disciplinary procedures in the CBA.  The Court finds no basis to conclude that the historical inquiry sees those great differences as analogous.

3.  *The Motivational Test*

Finally, the Court "inquire[s] whether the legislative record evinces a [legislative] intent to punish."  <u>Foretich</u>, 351 F.3d at 1225 (quoting <u>Nixon</u>, 433 U.S. at 478).  This test relies upon the "legislative history, context or timing of the legislation, or specific aspects of the text or structure of the disputed legislation," to check whether the purpose was "to 'encroach[] on the judicial function of punishing an individual for blameworthy offenses.'"  <u>Id.</u> (quoting <u>Nixon</u>, 433

14

U.S. at 478) (alteration in original).  "Given the obvious constraints on the usefulness of legislative history as an indicator of [the legislative body's] collective purpose, this prong by itself is not determinative in the absence of 'unmistakable evidence of punitive intent.'"  Id. (quoting Selective Serv. Sys., 468 U.S. at 856 n.15).

The Union points to no such "unmistakable evidence."  Rather, it contends that the Act's passage on an "emergency" basis "without regard to data-supported evidence, independent inquiry, or clear-headed investigation," Pl. Reply at 14, and merely to appease "protestors espousing anti-police rhetoric," id. at 6, shows an intent to punish members of the Union.  The Union points to statements of various Councilmembers, in which they acknowledged that "issues of brutality" were not prevalent in the District, id. at 7 (citing statement of Councilmember Anita Bonds), and explained that they felt a need to respond to "the outpouring of community demands for fundamental changes to the police."  Id. (citing statement of Councilmember David Grosso). The cited history also indicates that the Act was passed on an emergency basis, given both an outpouring of communications from District residents and the need for "bold action" to "pare . . . back" "violence and racism" in policing.  Id. (citing statement of Councilmember David Grosso). Standing on their own, these statements do not "evince punitive intent," Foretich, 351 F.3d at 1225 (quoting BellSouth II, 162 F.3d at 690), or hint at the District's concerns of accountability being a "smoke screen for some invidious purpose."  Kaspersky Lab, Inc., 909 F.3d at 459 (quoting BellSouth II, 162 F.3d at 689).

Plaintiff's bill-of-attainder challenge, consequently, does not get off the ground.

C.  Contract Clause

The Contract Clause "restricts the power of States to disrupt contractual arrangements." Sveen v. Melin, 138 S. Ct. 1815, 1821 (2018).  It provides that "[n]o state shall . . . pass any . . .

Law impairing the Obligation of Contracts," U.S. Const. Art. I, § 10, cl. 1, and it applies to the District.  Washington Teachers' Union Local No. 6, Am. Fed. of Teachers, AFL-CIO v. Bd. of Educ. of D.C., 109 F.3d 774, 778 (D.C. Cir. 1997).

Despite the firm language of the constitutional provision, not all laws affecting existing contracts fall within its scope.  Indeed, the Clause must leave room for the "'essential attributes of sovereign power,' . . . necessarily reserved by the States to safeguard the welfare of their citizens."  U.S. Trust Co. v. New Jersey, 431 U.S. 1, 21 (1977) (quoting Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 435 (1934)).  To determine what interference is permissible, courts employ a two-step test.  Sveen, 138 S. Ct. at 1821–22.  The first inquiry asks "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship."  Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1978).  At this stage, courts consider "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial."  Gen. Motors Corp. v. Romein, 503 U.S. 181, 186 (1992).  The substantiality of any impairment turns on "[t]he extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights."  Sveen, 138 S. Ct. at 1822.  If substantiality is found, the second inquiry asks "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose."  Id. (quoting Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411–12 (1983)).  If, as here, no such impairment is found, courts need not proceed to the second step. Sveen, 138 S. Ct. at 1822.  Because the parties have a pre-existing relationship — namely, the CBA that was in effect when the Mayor signed the Act, see Compl., ¶ 34; see also Sveen, 138 S. Ct. at 1822 (considering only "pre-existing contracts" and "pre-existing contractual

16

arrangements") — their disagreements center around the second and third components of the first inquiry.

In looking at whether the Act impairs the contractual relationship (component two), the Court notes that Section 116 is prospective, applying only to CBAs entered into after the one at issue expired on September 30, 2020.  The District thus asks for dismissal, explaining that the "Contract Clause's restriction on impairments of the obligations in contracts only applies to impairments of the obligations in <u>existing</u> contracts, not impairments of the obligations in any future contract."  Def. MTD at 28 (citing <u>McCracken v. Hayward</u>, 43 U.S. (2 How.) 608, 612 (1844), and <u>Ogden v. Saunders</u>, 25 U.S. (12 Wheat.) 213, 262 (1827)).  That line between existing and prospective contracts is somewhat blurred in this case, however, because the pre-existing CBA makes promises about future CBAs.  <u>See</u> Pl. MSJ at 18–19.  Specifically, that CBA guarantees that "[t]he current Article 12" — which covers "Discipline" — "shall be incorporated into any successor [CBA]."  CBA at 14.  Relying on this provision, the Union asks this Court to conclude that Section 116 "substantially impair[s] the current CBA and all future collective bargaining agreements entered into between the parties."  Pl. MSJ at 18–19.

As to any future contracts, it is well established that that Contract Clause only concerns itself with laws that retroactively impair current contract rights.  <u>See, e.g.</u>, <u>U.S. Trust Co.</u>, 431 U.S. at 18 n.15 (finding "States undoubtedly had the power to repeal the covenant prospectively") (citing <u>Ogden</u>, 25 U.S. (12 Wheat) 213); <u>Powers v. New Orleans City</u>, No. 13-5993, 2014 WL 1366023, at *4 (E.D. La. Apr. 7, 2014) ("[T]he Contract Clause applies only to substantial impairment of existing contracts and not prospective interference with a generalized right to enter into future contracts."), <u>aff'd sub nom.</u> <u>Powers v. United States</u>, 783 F.3d 570 (5th Cir. 2015); <u>Robertson v. Kulongoski</u>, 359 F. Supp. 2d 1094, 1100 (D. Or. 2004) ("The Contract

17

Clause does not prohibit legislation that operates prospectively."), aff'd, 466 F.3d 1114 (9th Cir. 2006).  The Court thus does not consider the Act's relationship to future CBAs.

The harder question is whether, as the Union contends, the Act impairs the pre-existing CBA.  As the District points out, at least one court has been skeptical of and rejected claims that laws with prospective effect impair the perpetual promises of pre-existing contracts.  See Def. MTD at 30;  Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Massachusetts, 666 F.2d 618, 637–38 (1st Cir. 1981)) (finding no Contract Clause problem where state legislation eliminated "provisions of contract that provide for indefinite (or perpetual) extension (or renewal) of the contract's terms").  Notably, the Union cites no caselaw holding that the Contract Clause constitutionalizes pre-existing contracts' promises about future contracts.  This Court is thus similarly hesitant to conclude that Section 116 infringes the CBA.

In any event, the Court agrees with the District that the Union has not adequately pled that any impairment of the pre-existing CBA is substantial (component three).  The Union contends that the removal of the disciplinary protections from Article 12 meets this requirement, see Pl. MSJ at 18; see also Compl., ¶ 37, but it has not explained how the new disciplinary procedures differ from what Article 12 had guaranteed.  Nor is the clear that the Union could, given that the District has not yet implemented new procedures or indicated whether any beyond those in the CMPA will be forthcoming.  Nor has the Union pled facts to show that the inclusion of Article 12 in future CBAs "substantially induced" it "to enter the contract," City of El Paso v. Simmons, 379 U.S. 497, 514 (1965), that Article 12's removal constitutes a "serious disruption" of its expectations, U.S. Trust Co., 431 U.S. at 19 n.17, or that the change is to "an area where the element of reliance [is] vital."  Allied Structural Steel Co., 438 U.S. at 246 (finding legislative changes to pension-plan funding substantial).

The Court thus dismisses this claim, too.

D.  <u>Substantive Due Process</u>

Deploying the final arrow in its constitutional quiver, the Union takes aim at Section 116 as a deprivation of substantive due process.  But dismissal is again appropriate because, as the District notes, that doctrine does not recognize the Union's claimed interests; moreover, any deprivation of those interests is not unconstitutionally arbitrary.  <u>See</u> Def. MTD at 38–41.

The threshold question in a substantive-due-process analysis is whether the government's action deprives the plaintiff of a constitutionally protected interest — namely, "life, liberty, or property."  U.S. Const. amend. V.  Substantive due process protects a narrow class of interests: those "implicit in the concept of ordered liberty," <u>Palko v. Connecticut</u>, 302 U.S. 319, 325 (1937), and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." <u>Reno v. Flores</u>, 507 U.S. 292, 303 (1993) (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 751 (1987)).  Even if a plaintiff pleads that a government action affects a protected interest, substantive due process merely guards against "government power arbitrarily and oppressively exercised," <u>Jefferson v. Harris</u>, 285 F. Supp. 3d 173, 184 (D.D.C. 2018) (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998)), and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  <u>County of Sacramento</u>, 523 U.S. at 846  (quoting <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 129 (1992)).  Indeed, a plaintiff must establish that the defendant's conduct "shock[s] the contemporary conscience." <u>Harvey v. District of Columbia</u>, 798 F.3d 1042, 1049 (D.C. Cir. 2015) (quoting <u>Estate of Phillips v. District of Columbia</u>, 455 F.3d 397, 403 (D.C. Cir. 2006)).  Given this narrow scope of the doctrine, courts are generally "reluctant to expand the concept of substantive due process," as

19

there are few clear "guideposts for responsible decisionmaking."  Collins, 503 U.S. at 125.  The

Court is similarly unwilling to do so in this case.

The Union contends that Section 116 "violates the substantive due process rights of the

D.C. Police Union and its members to bargain for terms inextricably linked to their employment

. . . as well as their property right to employment . . . ."  Pl. MSJ at 19; see also Compl., ¶¶ 42,

44.  In briefing, it clarifies its "right to bargain" claim: the CMPA "creates a property interest"

that Section 116 infringes by removing the collectively-bargained-for procedural safeguards.

See Pl. MSJ at 20 (citing Fonville v. District of Columbia, 448 F. Supp. 2d 21, 26–27 (D.D.C.

2006)) (discussing procedural due process).  Plaintiff cites no caselaw to show that this right to

collectively-bargained-for disciplinary procedures is "so rooted in the traditions and conscience

of our people as to be ranked as fundamental" for substantive-due-process purposes.  Cf. Range

v. Douglas, 763 F.3d 573, 588 n.6 (6th Cir. 2014) (explaining that substantive due process

protects "narrower" class of interests than procedural, and "[m]ost state-created rights that

qualify for procedural due process protections do not rise to the level of substantive due process

protection"); Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd.

of Huntington, 31 F.3d 1191, 1196 (2d Cir. 1994) (finding "simple, state-law contractual rights,

without more, [not] worthy of substantive due process protection" because they are "not the type

of important interests" that have been recognized) (internal citation and quotation marks

omitted).  Even assuming substantive due process recognizes the right to government

employment and continued employment as fundamental interests, Section 116 does not affect

Union members' employment status.  See Def. MTD at 38.  Rather, it simply removes "matters

pertaining to the discipline of sworn law enforcement personnel" from the pile of bargaining

chips.  See Act at 12.

To the extent that the Union argues that there is "no rational connection" between the District's action and its asserted government interest, the Union has "fallen far short of meeting its burden of demonstrating" as much. Wash. Teachers' Union Local No. 6, American Fed. of Teachers, AFL-CIO v. Bd. of Educ. of the D.C., 109 F.3d 774, 781 (D.C. Cir. 1997) (quoting Harran Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198 (1979)). As this Court explained in considering the Union's equal-protection challenge, its claim that Section 116 lacks a rational basis in untenable. See supra at 5–9. Dismissal is thus warranted.

E. Home Rule Act

Finally, while the Union's Complaint lists just four counts, it can liberally be read to also state a violation of the District's Home Rule Act. See Compl., ¶¶ 20, 28, 33, 41. Section 1-203.02 of that Act provides that "the legislative power of the District shall extend to all rightful subjects of legislation within the District consistent with the Constitution . . . ." The Court dismisses this claim because the Union's Home Rule Act contentions rise and fall with its constitutional claims. See Pl. MSJ at 21 (contending that "the constitutional violations" "also constitute violations of the D.C. Home Rule Act").

IV.   **Conclusion**

For the foregoing reasons, the Court dismisses the case without prejudice. It also denies the Union's Motion for Summary Judgment. A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 4, 2020